**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
Michael R. Dal Lago

Proposed Attorneys for Spa Chakra, Inc., *et. al.*,
Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                        :
                                             :    Chapter 11
SPA CHAKRA, INC.,[1]                          :
                                             :    Case No. 09-_____
                          Debtor.            :
---------------------------------------------------------------x
In re                                        :
                                             :    Chapter 11
SPA CHAKRA LLC,                              ::
                                             :    Case No. 09-_____
                          Debtor.            :
---------------------------------------------------------------x
In re                                        :
                                             :    Chapter 11
SPA CHAKRA INDIANA LLC,                      :
                                             :    Case No. 09-_____
                          Debtor.            :
---------------------------------------------------------------x
In re                                        :
                                             :    Chapter 11
SPA CHAKRA FIFTH AVENUE, LLC,                ::
                                             :    Case No. 09-_____
                          Debtor.            :
---------------------------------------------------------------x
In re                                        :
                                             :    Chapter 11
SPA CHAKRA FIFTH AVENUE INDIANA, LLC,  :
                                             :    Case No. 09-_____
                          Debtor.            :
---------------------------------------------------------------x

---

[1] A Motion For Joint Administration of these cases is being concurrently filed with this Affirmation.

**AFFIRMATION OF MICHAEL CANIZALES**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

**MICHAEL CANIZALES** duly affirms the following under penalty of perjury:

1.  I am the Chief Executive Officer of Spa Chakra, Inc. ("***Spa Chakra***"), one of the above-captioned debtors and debtors-in-possession (collectively with Spa Chakra, ***"Debtors"***). In accordance with Rule 1007-2 of the Local Rules of this Court, I submit this affirmation on behalf of the Debtors and in support of the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("***Bankruptcy Code***") that is being filed concurrently herewith, and in support of the various "First Day" and other motions that are also being filed by the Debtors. With respect to the financial information set forth herein, I have relied on the Debtors' books and records and, unless otherwise indicated, such information is unaudited.[2]

**Background**

***The Chapter 11 Filings***

2.  The Debtors are part of the Spa Chakra enterprise that own and manages several luxury health and wellness spas in the United States, Europe, and Asia in the following cities: Guerlain Spa in the Regent Bal Harbour Hotel, Bal Harbour, Florida; Guerlain Spa in the Waldorf Astoria Hotel, New York, New York; Spa Chakra on Fifth, New York, New York; Spa Chakra in the Conrad Indianapolis Hotel, Indianapolis, Indiana; Spa Chakra in the Hilton Short Hills, Short Hills, New Jersey; Spa Chakra in the Palmer House Hilton Hotel, Chicago, Illinois; Spa Chakra Marina Del Ray, Marina Del Ray, California; Nourish Spa in the Avalon Hotel & Spa, Portland, Oregon; Nourish Spa in the Hilton San Francisco, San Francisco, California; [Spa Chakra Call Center, Tampa, Florida]; Guerlain Spa, Residence Bel-Air, Island South, Hong Kong; Guerlain Spa, Shilla Seoul, Seoul, Korea; Guerlain Spa, Shilla Jeju, Jeju-Do, Korea;

---

[2]  Copies of various financial or loan related documents referred to herein are attached, when appropriate, to the Financing Motion (as defined herein).

Guerlain Spa, 68 Champs-Elysees, Paris, France; Guerlain Spa, Trianon Palace, Versailles, France; Spa Chakra Grand Hotel Park, Gstaad, Switzerland; Acqua di Parma Blu Mediterraneo, Yacht Club Costa Smeralda, Porto Cervo, Italy; Spa Chakra Alfarden Towers, Doha, Qatar. The Debtors currently employ approximately 170 full-time regular employees, including senior management, and 145 part-time employees.

3. On November 30, 2009, an involuntary petition (*"**Involuntary Petition**"*) was filed with this Court against Spa Chakra Fifth Avenue, LLC (*"**Fifth Avenue**"*) under chapter 7 of the Bankruptcy Code by three of Fifth Avenue's alleged creditors. In response, Fifth Avenue is concurrently filing a motion with this Court to convert the chapter 7 case to a case under chapter 11 of the Bankruptcy Code. In addition, as of the date hereof ("***Petition Date***")[3], the remaining Spa Chakra Debtors filed with this Court their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No creditors' committee, trustee, or examiner has been appointed in any of these cases.

***The Debtor's Corporate Structure***

5. Spa Chakra, a Delaware corporation, was incorporated in September 2004, and is the sole member of its domestic subsidiaries Spa Chakra, LLC, a Delaware Limited Liability Company, Spa Chakra Indiana LLC, an Indiana Limited Liability Company, Spa Chakra Fifth Avenue Indiana LLC, an Indiana Limited Liability Company, and Spa Chakra Fifth Avenue, LLC, a Delaware Limited Liability Company. Each of the Debtors share their corporate headquarters with Spa Chakra at 111 West 57th Street, Suite 1400, New York, NY 10019.

6. The following is a summary description of each of the Spa Chakra entities:

---

[3] Spa Chakra Indiana LLC filed its voluntary petition for relief under Chapter 11 on December 9, 2009.

### (i)  Spa Chakra, LLC and Spa Chakra, Inc.

7.   The Spa Chakra enterprise was initially launched in Australia in 1998, and organized domestically under Spa Chakra, LLC in 2001. It was funded via substantial investment by a small group of founders who collectively still own the highest percentage of common shares of Spa Chakra.  Spa Chakra, LLC was formed for the development and operation of luxury spas.

8.   Up until 2004, Spa Chakra, LLC was the Parent corporation in the Spa Chakra enterprise. In 2004, as part of an internal corporate restructuring, Spa Chakra, Inc. became the parent entity and the sole member of Spa Chakra, LLC and the other debtor affiliates described below.

9.   Spa Chakra, LLC is an operating entity, currently employs approximately 30 individuals, and is the tenant under certain leases of non-residential real property located in Florida and California.

### (ii)  Spa Chakra Fifth Avenue, LLC

10.   Spa Chakra Fifth Avenue, LLC was formed specifically in connection with the Cornelia Transaction (as defined and described in more greater detail below), and is the purchaser and owner/holder of substantially all of the acquired assets of Cornelia Fifth Avenue, LLC.

11.   Spa Chakra Fifth Avenue, LLC is the tenant under a lease of non-residential real property located on Fifth Avenue in New York City (*"Fifth Avenue Lease"*). It is also the borrower under a secured loan with Sterling National Bank, N.A. (*"Sterling"*). In accordance with those loan documents, Sterling holds a senior security interest on all of Spa Chakra Fifth Avenue, LLC's assets.

### (iii)  Spa Chakra Indiana LLC

12.   Spa Chakra Indiana LLC is also an operating entity, currently employs approximately 285 individuals, and is the tenant under certain leases of non-residential real property located in New Jersey, Illinois, Indiana, Oregon, and New York.

13.   Spa Chakra Indiana LLC plays a crucial role in processing and honoring the gift cards that are issued under the Spa Chakra name. These gift cards are specifically issued by Spa Chakra Indiana LLC.

### (iv)  Spa Chakra Fifth Avenue Indiana, LLC

14.   This Spa Chakra entity was initially formed so that the Fifth Avenue Lease could be transferred by Spa Chakra Fifth Avenue, LLC to Spa Chakra Fifth Avenue Indiana, LLC. This transfer, however, has not yet occurred. Consequently, Spa Chakra Fifth Avenue Indiana, LLC is not an operating entity and has no assets or liabilities and has only been used in an administrative capacity to collect the credit cards receipts from the Fifth Avenue location.

**The Debtors' Business and Operations**

15.   Collectively, the Spa Chakra enterprise is made up of each of the above-referenced corporate entities which operate as a whole on a consolidated basis.  For that reason, and unless otherwise noted, these entities shall be referred to collectively hereinafter as either the "**Company**" or the "**Debtors**."

16.   In order to facilitate the successful expansion of the Spa Chakra business, the Debtors consummated various equity financings beginning in 2005 through 2007, whereby both common and preferred shares were issued to qualified investors. The Debtors continued to expand domestically and internationally from 2001 through 2009, at one point in time having a total of twenty two (22) locations, with an opening cost for each location varying from a *de minimis* amount (for takeovers of other spa locations) to between $500,000 and $1,000,000 for "new builds."

17. In 2007, the Company entered into a strategic relationship with Hilton Hotels Corporation ("***Hilton Deal***") in order to fuel substantial growth in revenue and profits. The Company assumed additional overhead and opened additional offices in order to accommodate the Hilton deal and a pipeline of similar openings.

18. In April 2008, the Company hired Piper Jaffray, a well know investment bank, to source and coordinate a $15,000,000 equity raise ("***Piper Equity Raise***"). At that time, the Company expected to raise the aforementioned capital with a very strong valuation in a time frame for closing such transaction between ninety (90) and one hundred and twenty (120) days.

19. In order to ensure adequate operating capital during the Piper Equity Raise period, on June 13, 2008 the Company entered into a Loan and Security Agreement ("***Loan and Security Agreement***") with Hercules Technology Growth Capital ("***Hercules***"). The Company intended to pay off the debt issued pursuant to the Hercules Agreement with the proceeds from the Piper Equity Deal and certain earnings.

20. One week into the "road show" for the Piper Equity Raise, one of the current shareholders of Spa Chakra, Inc. attempted to acquire a controlling interest in Spa Chakra, Inc. After consideration, the Board of Directors of Spa Chakra, Inc. determined that the acquisition of such controlling interests was not in the best interests of the Company. Unfortunately, as a result of the time taken by this process, the Piper Equity Raise was delayed and did not resume until September of 2008. By that time the country had begun to sink into a recession, leading to the closure of the capital markets, making it virtually impossible to consummate a transaction such as that contemplated by the Piper Equity Raise.

21. The hotel industry was a casualty of the recession because there was a significant lack of funding for hotel construction finance. As a result, many of the anticipated hotel deals pursuant to the Hilton Deal were not consummated, causing a substantial decrease in anticipated

revenue for the Company. In addition, the Company opened four significant locations in the third and fourth quarters of 2008, the Waldorf-Astoria in New York, New York, the Hilton Short Hills in Short Hills, New Jersey, the Palmer House Hilton in Chicago, Illinois, and Hilton Grand Vacations Club Spa in Las Vegas, Nevada. The ability for these locations to transition and begin generating revenue for the Company was significantly prolonged due to the effects of the economy and the changes in the hotel "mix" related thereto. Further, with many Company locations offering fitness facilities for use by its members, fitness revenue decreased twenty-five percent (25%) due to the across the board domestic decrease in discretionary spending during the recession.

22. The effects on the Hilton Deal and ancillary repercussions of the recession ultimately contributed to the Company's default in the payments required pursuant to the Loan and Security Agreement in addition to resulting in capital shortfalls and shortfalls with respect to the projections. The Company had to write off more than $5,000,000 worth of consulting revenue and was off by over $10,000,000 in cash due to the demise of the Hilton deal alone.

23. In order to compensate for this decrease in available capital, the Company streamlined its operations, negotiated eight (8) amendments to the Loan and Security Agreement with Hercules, and closed all of its non-performing spa locations. As a result, the Company posted strong results in 2009 on an EBITDA basis, allowing it to remarket the Piper Equity Raise to a larger and broader audience. With Piper Jaffrey's knowledge and consent, the Company also retained Wed Bush, an investment bank, to assist in the equity raise process. Notwithstanding the Company's efforts, it remained in a tight cash situation, forcing it to acquire bridge financing from executives, shareholders, and Hercules in order to allow the Company to survive until the consummation of the Piper Equity Raise.

24.   Additionally during this time, the Company consummated the strategic acquisition of Cornelia Day Spa in New York, New York ("***Cornelia Transaction***"), pursuant to which it acquired substantially all of the assets and assumed certain specified liabilities of New York limited liability company Cornelia Fifth Avenue, LLC and rebranded all the operations as *Spa Chakra on Fifth*. Immediately following the closing of the Cornelia Transaction, the Company discovered that the sellers made a significant number of material breaches of representations and warranties, the most significant of which was related to the materially false disclosure and understatement of then-outstanding gift card liabilities. As a result, Spa Chakra Fifth Avenue, LLC (the buyer in the Cornelia Transaction and subsidiary of Spa Chakra, Inc.), was forced to redeem hundreds of thousands of dollars of gift cards that had been issued prior to the consummation of the Cornelia Transaction, but not disclosed to the buyer prior to the closing. Due to the economic damage caused from such material breach and numerous other breaches of representations, warranties and covenants, the Company, in accordance with the Cornelia Transaction documents, demanded payment of a $2,400,000 promissory note ("***Cornelia Note***") issued to it by the sellers in the Cornelia Transaction. Because of the sellers' default in paying the Cornelia Note, the Company was forced to commence litigation, which is currently pending against the sellers in order to recoup such amounts and cover the liabilities that were caused by the sellers' breaches of the representations, warranties, and covenants in the Cornelia Transaction. The litigation costs and the repercussions related to the breaches further compromised the Company's cash position.

25.   In addition to the problems related to the gift card redemptions and the other material breaches of representations and warranties that caused significant financial harm to the Company, the revenue from the salon located on Fifth Avenue decreased by sixty percent (60%) due to the departure of celebrity hairstylist David Evangelista and his salon team.   The

performance and revenue generation of such salon team was a material inducement to Spa Chakra's consummation of the Cornelia Transaction.

***The Proposed Transaction***

26. By the last quarter of 2009, it became clearer to the Company that it needed to effect drastic changes in its operations to achieve liquidity and that it needed additional financing for continued operations. It also began considering, and ultimately concluded, that it might need to commence voluntary bankruptcy proceedings some time after the New Year for some or all of the Debtors.

27. The Company also engaged in a continuing dialog with Hercules about a possible acquisition by Hercules of the Company or its assets. Hercules is a public Company with a focus on the healthcare industry. Founded in 2003, Hercules is experienced in offering growth capital to companies in various stages of development. It has eleven managing directors and principals who have significant and long term venture capital, lending, and investing experience. In November 2009, the Company and Hercules explored the potential synergies of the two companies and concluded that a transaction would be in both parties' best interests.

28. Consequently, the parties began working on an orderly process that would result in a pre-negotiated bankruptcy filings with Hercules acting both as the stalking horse in a 363 process and the debtor-in-possession lender.

29. Unfortunately, on November 30, 2009, Involuntary Petition was filed against Spa Chakra Fifth Avenue, LLC for relief under chapter 7 of the Bankruptcy Code with this Court. There is little doubt that the Involuntary Petition was improper – the claims of two of the three petitioning creditors do no qualify to be petitioning creditors under Section 303(b)(1) because the alleged claims are contingent and subject to a bona fide dispute about both liability and amount; however, the damage caused by the Involuntary Petition was immediate – the filing was picked

up by the *Crains* and both Hercules and the Company recognized that the impact on sales and consumer confidence especially during the holiday season, made an immediate filing to preserve asset value imperative.

30.   On December 10, 2009 (**"Petition Date"**), prior to the expiration of its time to answer the Involuntary Petition, Spa Chakra filed a motion to convert the involuntary chapter 7 case to a voluntary case under chapter 11 case pursuant to sections 348 and 706(a) of title 11 of the Bankruptcy Code and attached a proposed voluntary petition under chapter 11 of the Bankruptcy Code and concurrently therewith, the remaining Spa Chakra entities each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[4]

31.   The Debtors and Hercules are now working on an accelerated basis to document and enter into an asset purchase agreement (**"APA"**) that has been agreed to in concept – and is a condition of the Lender providing DIP Financing – pursuant to which certain of the assets (**"Assets"**) of the Company will be sold to Hercules and certain liabilities including all gift card and customer loyalty obligations will be assumed in a sale and auction process subject to higher or better offers pursuant to Section 363 of the Bankruptcy Code (**"Sale"**).

32.   In order to effectuate the Sale, the Company expects within 10 days to file a motion (**"Sale Motion"**), pursuant to sections 105(a), 363, 503, and 1146(a) of the Bankruptcy Code and Rules 2002, 6004, 6006, 9008, and 9014 of the Bankruptcy Rules for an order authorizing and approving a sale of the Assets free and clear of liens, claims, and encumbrances upon the terms and conditions to be set forth in the APA and for approval of certain bidding and auction procedures. The Company believes that the Sale subject to the higher or better auction process provided under Section 363 is the best way to achieve maximum value for the Company's assets and facilitate a reorganization. The Company further believes that its remaining operational

---

[4]  Spa Chakra Indiana LLC filed its voluntary petition on an emergency basis on December 9, 2009.

assets, inventory, account receivable collections, and various claims and causes of action are best dealt with in the context of a chapter 11 proceeding and, accordingly, has filed a voluntary petition at this time seeking protection under the Bankruptcy Code.

***Additional Information In Support of First Day Motions***

33. In accordance with Rule 1007-2(b), the Debtors represent that they intend to continue in the management of their properties as debtors and debtors in possession pursuant to Bankruptcy Code section 1107 and 1108. In order to continue operating effectively as debtors in possession, the Debtors require approval of certain transactions and dealings immediately. Therefore, the Debtors are moving this Court for approval of certain "***First Day***" matters in the instant Case (collectively the "***First Day Motions***"). The following First Day Motions require immediate approval in order for the Debtors' business to continue uninterrupted during the immediate postpetition period.

### (i) Joint Administration

34. The Debtors will seek joint administration of these Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ("***Bankruptcy Rules***"). The Debtors believe that these cases should be administered jointly because the business operations of the Debtors are closely related and they share general administration.

35. Entry of an order directing joint administration of these cases will obviate the need for duplicative notices, applications and orders, and thereby save considerable time and expense for the Debtors and their estates. The rights of the respective creditors of the Debtors will not be adversely affected by the proposed joint administration of these cases because each creditor may still file its claim against a particular estate. In fact, the rights of all creditors will be enhanced by the reduction in costs resulting from joint administration. The Court will also be relieved of the burden of entering duplicative orders and maintaining duplicative files. Furthermore, supervision

of the administrative aspects of the chapter 11 cases by the Office of the United States Trustee will be simplified.

36. By reason of the foregoing, the Debtors submit that the interests of the Debtors, their creditors and their estates would best be served by joint administration of the above-captioned cases.

### (ii) DIP Financing

37. Because the Company has insufficient funds to operate pending consummation of the proposed Sale to Hercules, and an immediate and critical need exists for the Debtors to obtain funds in order to continue the operation of their business and to preserve and maximize the value of the Debtors' assets, Hercules is willing to provide post-petition financing under certain terms and conditions. Accordingly, simultaneously with the commencement of this case, the Debtors are filing an emergency motion for interim and final orders: (i) authorizing the Debtors to obtain secured post-petition financing from Hercules and use of Cash Collateral pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364(c) and Bankruptcy Rules 2002, 4001, 6004, and 9014, (ii) granting postpetition liens and providing superpriority administrative expenses status; (iii) modifying the automatic stay; (iv) scheduling and approving the form and method of notice of final hearing; and (v) granting other related relief ("***Financing Motion***").

38. Without such funds, the Debtors will not be able to meet its payroll and other direct operating expenses or obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estate. At this time, the ability of the Debtors to finance their operations and the availability to it of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money is vital to the confidence of the Debtors' vendors and suppliers of goods and services, to its customers and to the preservation and maintenance of the going concern value of the Debtors'

estate. Given its current financial condition, financing arrangements and capital structure, the Debtors have been unable to obtain financing from sources other than from Hercules on terms more favorable than those offered by Hercules. The Company is also unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1) or debt secured only as described in section 364(c)(2). Hercules is willing to advance monies to the Debtor only upon the terms and subject to the conditions contained in the Financing Motion.

### *(iii) Wage Motion*

39. The Debtors will seek this Court's authorization to pay (i) certain prepetition employee wages, salaries, contractual compensation, and benefits, (ii) reimbursement obligations on account of prepetition employee business expenses, (iii) all costs and expenses incident to the foregoing (including payroll-related taxes and processing costs), and authorizing and directing the Debtors' bank to receive, process, honor, and pay all related checks drawn on the Debtors' operating account; and (iv) directing certain benefit providers to maintain the Debtors' current benefits packages and agreements.

40. The Debtors believe that the prepetition wages and other Employee claims they seek to pay would be entitled, in any event, to priority treatment to the extent of $10,950 for each individual under sections 507(a)(4) and 507(a)(5). As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. Thus, the Court's granting of the relief sought by the Debtors would only cause such Employee claims to be paid early in the case, instead of waiting until confirmation.

41. In addition, certain Prepetition employee deductions that are subject to the motion, such as contributions to the employee benefits program, are not the Debtors' property and have

merely been withheld from employees' paychecks on another party's behalf. As such, these amounts are not subject to the normal bankruptcy prohibitions against payment. The Debtors seek the Courts authority to transmit the deductions to the proper parties in the ordinary course of business.

42.    Most importantly, however, is that the Debtors certainly will suffer immediate and irreparable harm if the relief requested in the Wage Motion is denied. Failure to pay the prepetition compensation and employee benefits, and to continue the other programs described in the Wage Motion would surely distract the Debtors' employees by imposing significant financial hardships on employees and their families. Consequently, the employees may seek alternative employment opportunities, which would deplete the Debtors' workforce and hinder the Debtors' ability to meet its customer obligations at the most critical of the year – the holiday season. Accordingly, there can be no doubt that the Debtors must do its utmost to retain its workforce by, among other things, continuing to honor all wage, benefit, and related employee obligations that accrued prepetition.

### (iv)  *Gift Card Motion*

43.    The Debtors are also seeking authority from the Court to honor or pay certain pre-petition obligations to their customers in the ordinary course of Debtors' business in connection with the Debtors' gift card programs, or other customer programs. Specifically, entry of an order approving the Debtors' ability to continue to honor these programs is necessary to avoid immediate and irreparable harm to the Debtors and their estates, particularly during the Holiday Season when most gift cards are purchased as holiday presents for others. Absent the Debtors' assurance that the Gift Cards/Customer Programs will be honored, most customers will be reluctant to purchase these items as holiday gifts for family, friends, etc.

44.  The continued support of this constituency is absolutely essential to the survival of Debtors' businesses and Debtors' ability to reorganize. Any delay in honoring these various Customer Programs or discontinuation of Customer Programs as a result of the commencement of these cases will severely and irreparably impair Debtors' customer relations at a time when the loyalty and support of those customers are extremely critical.

45.  In sum, if Debtors are prohibited from maintaining policies consistent with past business practice and the customer programs, then the customers' lost confidence in the Debtors will damage Debtors' business to an extent that far exceeds any actual cost associated with continuation the customer programs.

### (v)  Rejection of Lease

46.  Although not a traditional First Day Motion, the Debtors will be filing on the Petition Date a motion seeking an order approving the rejection of certain unexpired leases of non-residential real property (***"Leases"***) pursuant to Section 365(a) of the Bankruptcy Code.

47.  In an effort to reduce postpetition administrative costs, and in the exercise of the Debtors' sound business judgment, the Debtors have determined that the Leases covering the respective locations no longer provide any benefit to the Debtors or their estates. Accordingly, the Debtors will seek this Court's authorization to reject the Leases as of the Petition Date, such rejection being in the best interests of the Debtors, their estates, their creditors and other parties in interest.

### Twenty Largest Unsecured Creditors

48.  A list of the names, addresses, and telephone numbers of the creditors holding the twenty (20) largest unsecured claims against each of the Debtors, the estimated amount of each listed claim as reflected in the Debtors' books and records and, if appropriate, an indication of

whether such claim is contingent, unliquidated, disputed, or partially secured, is attached as Schedule 1007-1.

## Holders of Five Largest Secured Claims

49.   A list of the names and addresses of the creditors holding the only two secured claims against the Debtors, together with the Debtors' accounts, the estimated amount of each listed claim as reflected in the Debtors' books and records, a brief description and estimate of the value of the collateral securing such claim and, if appropriate, an indication of whether such claim or lien is disputed, is attached as Schedule 1007-2.

## Summary Of Debtors' Assets And Liabilities

50.   A preliminary summary as of September 30, 2009 of the Debtors' assets and liabilities on a consolidated basis, as well as for Spa Chakra, Inc. and Spa Chakra Fifth Avenue LLC, is attached as Schedule 1007-3.

## Debtors' Publicly-Held Securities And Insider Holders Thereof

51.   To the best of my knowledge, there are no classes of shares of stock, debentures, or other securities of the Debtors that are publicly held.

## Debtors' Property In The Possession Of Certain Others

52.   To the best of my knowledge, there is no property of the Debtors in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor or agent for any such entity.

## Debtors' Corporate and Operational Premises

53.   The Company leases its corporate headquarters located at 111 West 57th Street, Suite 1400, New York, New York 10019 ("*Corporate Office*") but has spa locations domestically in New York, New Jersey, Indiana, Illinois, Florida, California, and Oregon.

54.   The Debtors do not own any other real property from which the Company operates its business.

## Debtors' Substantial Assets

55.  The Debtors substantial assets include the leases of which it is a party and its intellectual property.

## Location Of Debtors' Books And Records

56.  The Debtors maintain their books and records at the Corporate Office.

## Nature and Status of Actions Where Judgment Against
## Debtor Or Seizure Of Debtors' Property Is Imminent

57.  A list describing each action pending or threatened against the Debtors or their property where a judgment or a seizure of their property may be imminent is attached as Schedule 1007-4.

## Debtors' Senior Management

58.  A list of the individuals who comprise the Debtors' existing senior management, their tenure, and a brief summary of their relevant responsibility and experience is attached as Schedule 1007-5.

## Continuation of Operations

59.  Until the Debtors' Plan of Reorganization is consummated and/or all of their assets are sold, the Debtors intend to continue to operate their business and manage their properties in accordance with sections 1107(a) and 1108 of the Bankruptcy Code.

## Debtors' Employees And Estimated Payroll

60.  The Debtors' estimated amount of weekly payroll for their employees (exclusive of officers, directors, and stockholders) for the thirty (30)-day period following the filing of the Debtors' chapter 11 petition is attached as Schedule 1007-6.

61.  The amount proposed to be paid to the Debtors' officers and directors for their services for the thirty (30)-day period following the filing of the Debtors' chapter 11 petitions is

attached as Schedule 1007-7. No payments are to be made to any stockholders in their capacity as stockholders.

## Summary Projections

62.   A schedule, for the thirty (30)-day period following the filing of the Debtors' chapter 11 cases, of the Debtors' estimated cash receipts and disbursements, net cash gain or loss, and obligations or receivables expected to accrue but remain unpaid (other than professional fees), is attached as Schedule 1007-8.

63.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Dated: New York, New York
        December 10, 2009


                                        */s/ Michael Canizales*          
                                        **MICHAEL CANIZALES**

# SCHEDULE 1007-1

## SCHEDULES TO 1007 MOTION

Schedule 1007-1

Twenty Largest Unsecured Creditors

### SPA CHAKRA INDIANA LLC

| | | | |
|---|---|---|---|
| Hilton Short Hills | 1,100,000.00 | Short Hills Hilton, LLC | 41 JFK Parkway, Short Hills, NJ 07078, with a copy to: Hilton Woldwide 7930 Jones Branch Drive McLean, Virginia 22102 |
| Internal Revenue Service | 1,028,110.83 | Internal Revenue Service | Insolvency, 5th Floor290 Broadway,New York, NY, 01007 |
| New York State Dept of Taxation & Finance - Sales Tax | 225,859.62 | New York State Department of Taxation and Finance | Bankruptcy Section, PO Box 5300, Albany, NY 12205-0300 |
| Excellus | 189,633.74 | Excellus BC BS | PO Box 4752, , Syracuse, NY 13221-4752 |
| Mintz Levin PC | 155,631.67 | Mintz Levin PC | P.O. Box 4539, Boston, MA 02212 |
| June Jacobs | 110,524.44 | June Jacobs | 460 Park Avenue, 16th Floor, NY, NY 10022 |
| JMBM | 102,030.70 | JMBM | 1900 Avenue of the Stars, 7th floor, , Los Angeles, CA 90067-4308 |
| Hilton Reservations & Customer Care | 100,192.02 | Hilton Reservations Worldwide | 2050 Chennault Drive, Carrollton, TX, 75006, Attention: Finance |
| Avalon Hotel | 93,311.35 | Avalon Hotel Owner, LLC | 614 SW 11th Avenue, Portland, OR 97205 |
| Conrad Indianapolis | 80,282.10 | Circle Block Partners, LLC | c/o Kite Realty Group Trust, 30 South Meridian Street, Suite 1100, Indianapolis, IN 46204 |
| Guerlain | 77,208.65 | Guerlain | DUNS #008918823, P.O. Box 905166, Charlotte, NC 28290-5166 |
| Blondie's Treehouse, Inc. | 75,973.73 | Blondie's Treehouse Inc. | GPO P.O. Box 29183, , New York, NY 10087-9183 |
| Kohn Pedersen Fox Associates P.C. | 75,544.80 | Kohn Pedersen Fox Associates P.C. | Attn: Peter Catalano, 11 West 42nd Street, New York, NY 11019 |
| Zeta Interactive | 75,000.00 | Zeta Interactive | 99 Park Avenue, 23rd Fl, New York, NY 10016 |

| | | | |
|---|---|---|---|
| Conrad Miami | 75,000.00 | Conrad Miami | Expirio Santa Plaza, 1395 Brickell Ave, Miami, Fla 33131, Attn: General Manager |
| Manhattan Linen | 69,420.42 | Manhattan Linen | Rose Mary, 220 Fulton Terrace, Cliffside Park, NJ 07010 |
| NJ Division of Taxation - Sales Tax | 58,341.69 | State of New Jersey | New Jersey Division of Taxation, Information & Publications Branch, PO Box 281, Trenton, NJ 08695 |
| AC Martin Partners, Inc. | 54,989.63 | AC Martin Partners, Inc. | 444 South Flower Street, Suite 1200, Los Angeles, CA 90071 |
| Concessio | 50,116.00 | Concessio | 7343 El Camino Real #255, , Atascadero, CA 93422-4697 |
| Ready Care | 41,525.80 | Ready Care | 15845 East 32nd Ave., Unit A, Aurora, CO 80011 |

**Aetna**
**$33,382.32**
151 Farmington Ave,
Hartford CT 06156 – 860-273-0123

**Ceridian**
**$26,000.00**
Law offices of Kenneth Freed, 14226
Ventura Blvd. P.O. Box 5914
Sherman Oaks, CA 91413

**Cosmetic Insurance**
**$21,862.15**
350 Hudson Street, 4th Floor
New York, NY 10014

**Accountemps**
**$20,049.25**
c/o Robert Half, International, 2884 Sand
Hill Road
Menlo Park, California 94025

**Frenkel & Co., Inc**
**$19,626.00**
350 Hudson St., 4th Fl,
New York, NY 10014

**Clifton Budd & Demaria, LLP**
**$18,816.12**
420 Lexington Ave, Suite 420
New York, NY 10170

**Aver Web Inc**
**$18,750.00**
1939 Stratford Dr.,
Westbury, NY 11590

**Lakeland Bank**
**$16,600.00**
250 Oak Ridge Rd
Oak Ridge NJ 07438

**Axis Promotions**
**$16,535.74**
578 Broadway, Suite 406
New York NY 10012

**Kramer Levin Naftalis&Frankel,LLP**
**$14,832.70**
  1177 Avenue of the Americas
New York, NY 10036

**G.M. Collin Skin Care Inc**
**$14,457.28**
613 State Route 3
Plattsburgh, NY,12901-6530

**Olshan & Grundman-**
**$12,872.38**
  Park Avenue Tower, 65 E. 55th St.
New York, NY 10022

**Alliance Leasing**
**$12,825.00**
120 Madison Street 17th Floor
Syracuse, NY 13202

**American International Companies**
**$12,448.00**
70 Pine Street
  New York, NY 10270

**Town and Garden**
**$12,138.30**
328 East 25th Street
New York, NY 10010

**Mintz Levin Cohn Ferris**
**Glovsky&Popeo**
**$11,109.51**
  666 Third Avenue
  New York, NY 10017

**American Society of Composers**
**$9,406.96**
  One Lincoln Plaza
  New York, NY 10023

**Hudson Yards Catering**
**$8,893.66**
640 W. 28th St.
New York, NY 10001

**Doubledown Media, LLC-**
**$8,000.00**
c/o Chapter 7 Trustee: Robert Geltzer,
The Law office of Robert Geltzer, 1556
Third Ave, Suite 505
NYC, NY 10128

**Structuretone**
**$7,799.75**
770 Broadway
New York, NY 10003

# United States Bankruptcy Court
## Southern District of New York

IN RE:

Case No. <u>09-17261</u>

<u>Spa Chakra LLC</u>

Chapter <u>11</u>

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| **Hilton San Francisco**<br>**333 O'Farrel Street**<br>**San Francisco, CA 94102** | **Attn: Theresa Ling**<br>**(415) 202-7731** | | | 246,303.90 |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, [the president *or* other officer *or* an authorized agent of the corporation][*or* a member *or* an authorized agent of the partnership] named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: <u>December 10, 2009</u>        Signature: _____

<u>**Michael Canizales,**</u>

(Print Name and Title)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# United States Bankruptcy Court
## Southern District of New York

IN RE:                                                    Case No. **09-17262**_____

**Spa Chakra Fifth Avenue Indiana, LLC**_____        Chapter **11**
                  Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim (if secured also state value of security) |
|---|---|---|---|---|

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, [the president *or* other officer *or* an authorized agent of the corporation][*or* a member *or* an authorized agent of the partnership] named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: **December 10, 2009**_____        Signature: _____

                                 **Michael Canizales,**_____
                                                                    (Print Name and Title)

© 1983-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# United States Bankruptcy Court
## Southern District of New York

IN RE:                                                    Case No. **09-17260**

**Spa Chakra, Inc.**                                      Chapter **11**

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim (if secured also state value of security) |
|---|---|---|---|---|

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, [the president *or* other officer *or* an authorized agent of the corporation][*or* a member *or* an authorized agent of the partnership] named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: **December 10, 2009**          Signature: _____

**Michael Canizales,** _____

(Print Name and Title)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# SCHEDULE 1007-2

Schedule 1007-2

Two Secured Creditors

1.  The Company entered into that certain Loan and Security Agreement, dated as of June 13, 2008 (as amended, the "LSA") by and between Spa Chakra, Inc., Spa Chakra, LLC, Spa Chakra Fifth Avenue, LLC, Spa Chakra Indiana LLC, Spa Chakra Fifth Avenue Indiana LLC (collectively, the "Borrowers") and Hercules Technology II, L.P. (as "Lender") whereby the Lender has a first priority lien against all of the assets of all entities of the Borrower, except Spa Chakra Fifth Avenue, LLC. In the case of Spa Chakra Fifth Avenue, LLC, the Lender has a second priority lien, subject to the first priority lien for Sterling, as explained further below.

2.  Spa Chakra Fifth Avenue, LLC (as "Borrower") entered into that certain Loan and Security Agreement with Sterling National Bank, N.A. (the "Bank") dated as of July 15, 2009 whereby the Bank holds a first priority lien against the assets of the Borrower.

# SCHEDULE 1007-3

## CONSOLIDATED

**ASSETS**
  **CURRENT ASSETS**

| | |
|---|---:|
| Cash & Cash Equivalent Total | 27,954.33 |
| Accounts Receivable - Consulti | 3,712,577.17 |
| Room Charge | 155,993.90 |
| Accounts Receivable Total | 3,868,571.07 |
| Allowance for Doubtful Acct | -3,712,577.17 note 2 |
| Net Accounts Receivable, Total | 155,993.90 |
| | |
| Inventory & Trading Stock Tota | 412,395.31 |
| Prepayment & Deposits Total | 593,243.14 |
| Other Assets & Receivables Tot | 2,399,671.62 |
| **CURRENT ASSETS TOTAL** | 3,589,258.30 |

  **NON-CURRENT ASSETS**

| | |
|---|---:|
| Investments Total | |
| Plant, Property & Equip Gross | 14,145,111.16 |
| Accumulated Depreciation Total | -815,286.63 |
| Plant, Property & Equip Net | 13,329,824.53 |
| | |
| Goodwill & Intangible Gross | 11,144,096.62 |
| Accumulated Amortization Total | 358,274.90 |
| Goodwill & Intangible Net | 11,502,371.52 |
| | |
| **NON-CURRENT ASSETS TOTAL** | 24,832,196.05 |
| | |
| **ASSETS TOTAL** | **28,421,454.35** |

**LIABILITIES**
  **CURRENT LIABILITIES**

| | |
|---|---:|
| Accounts Payable Total | -2,574,239.35 |
| Unearned / Deferred Income Tot | -2,166,328.64 |
| Accrual Total | -250,000.00 |
| Tax Liabilities Total | -392,207.84 |
| Employee's Entitlements Total | -1,412,815.54 |
| Borrowings Total | -3,865,001.30 |
| **CURRENT LIABILITIES** | -10,660,592.67 |

  **NON-CURRENT LIABILITIES**

| | |
|---|---:|
| Lease Liability Total | -1,183,988.50 |
| Hercules Loan Payable | -11,050,000.00 note 2 |
| **NON-CURRENT LIABILITIES** | -12,233,988.50 |
| | |
| **LIABILITIES TOTAL** | **-22,894,581.17** |

note 1: Hercules Loan Payable is a joint and several obligation
of all entities, but is listed for GAAP purposes on the Spa
Chakra, Inc. and consolidated balance Sheet

note2: Consulting AR needs to be reserved for uncertainty, and is deemed by
management as uncollectable

**INC**

**ASSETS**
  **CURRENT ASSETS**
    Cash & Cash Equivalent Total

| | |
|---|---|
| Accounts Receivable - Consulti Room Charge | 3,712,577.17 |
| Accounts Receivable Total | 3,712,577.17 |
| Allowance for Doubtful Acct | -3,712,577.17 note 2 |
| Net Accounts Receivable, Total | 0.00 |
| | |
| Inventory & Trading Stock Tota | |
| Prepayment & Deposits Total | 593,243.14 |
| Other Assets & Receivables Tot | |
| **CURRENT ASSETS TOTAL** | 593,243.14 |

  **NON-CURRENT ASSETS**

| | |
|---|---|
| Investments Total | |
| Plant, Property & Equip Gross | |
| Accumulated Depreciation Total | |
| Plant, Property & Equip Net | 0.00 |
| | |
| Goodwill & Intangible Gross | 11,144,096.62 |
| Accumulated Amortization Total | 358,274.90 |
| Goodwill & Intangible Net | 11,502,371.52 |
| **NON-CURRENT ASSETS TOTAL** | 11,502,371.52 |
| **ASSETS TOTAL** | **12,095,614.66** |

**LIABILITIES**
  **CURRENT LIABILITIES**

| | |
|---|---|
| Accounts Payable Total | |
| Unearned / Deferred Income Tot | |
| Accrual  Total | |
| Tax Liabilities Total | |
| Employee's Entitlements Total | |
| Borrowings Total | |
| **CURRENT LIABILITIES** | 0.00 |

  **NON-CURRENT LIABILITIES**

| | |
|---|---|
| Lease Liability Total | |
| Hercules Loan Payable | -11,050,000.00 note 2 |
| **NON-CURRENT LIABILITIES** | -11,050,000.00 |
| | |
| **LIABILITIES TOTAL** | **-11,050,000.00** |

note 1: Hercules Loan Payable is a joint and several obligation of all entities, but is listed for GAAP purposes on the Spa Chakra, Inc. and consolidated balance Sheet

note2: Consulting AR needs to be reserved for uncertainty, and is deemed by management as uncollectable

**FIFTH**

**ASSETS**
  **CURRENT ASSETS**
    Cash & Cash Equivalent Total
      Accounts Receivable - Consulti
      Room Charge
    Accounts Receivable Total | 0.00
      Allowance for Doubtful Acct
  Net Accounts Receivable, Total | 0.00

    Inventory & Trading Stock Tota
    Prepayment & Deposits Total
    Other Assets & Receivables Tot | 2,399,671.62
  **CURRENT ASSETS TOTAL** | 2,399,671.62

  **NON-CURRENT ASSETS**
    Investments Total
    Plant, Property & Equip Gross | 8,085,600.00
    Accumulated Depreciation Total
    Plant, Property & Equip Net | 8,085,600.00

    Goodwill & Intangible Gross
    Accumulated Amortization Total
    Goodwill & Intangible Net

  **NON-CURRENT ASSETS TOTAL** | 8,085,600.00

**ASSETS TOTAL** | **10,485,271.62**

**LIABILITIES**
  **CURRENT LIABILITIES**
    Accounts Payable Total
    Unearned / Deferred Income Tot
    Accrual Total
    Tax Liabilities Total
    Employee's Entitlements Total
    Borrowings Total | -2,564,977.00
  **CURRENT LIABILITIES** | -2,564,977.00

  **NON-CURRENT LIABILITIES**
    Lease Liability Total
    Hercules Loan Payable | note 2
  **NON-CURRENT LIABILITIES**

**LIABILITIES TOTAL** | **-2,564,977.00**

note 1: Hercules Loan Payable is a joint and several
obligation of all entities, but is listed for GAAP purposes on
the Spa Chakra, Inc. and consolidated balance Sheet

## INDIANA

**ASSETS**

**CURRENT ASSETS**

| | |
|---|---|
| Cash & Cash Equivalent Total | 27,954.33 |
| Accounts Receivable - Consulti | |
| Room Charge | 155,993.90 |
| Accounts Receivable Total | 155,993.90 |
| Allowance for Doubtful Acct | |
| Net Accounts Receivable, Total | 155,993.90 |
| Inventory & Trading Stock Tota | 412,395.31 |
| Prepayment & Deposits Total | |
| Other Assets & Receivables Tot | |
| **CURRENT ASSETS TOTAL** | 596,343.54 |

**NON-CURRENT ASSETS**

| | |
|---|---|
| Investments Total | |
| Plant, Property & Equip Gross | 6,059,511.16 |
| Accumulated Depreciation Total | -815,286.63 |
| Plant, Property & Equip Net | 5,244,224.53 |
| Goodwill & Intangible Gross | |
| Accumulated Amortization Total | |
| Goodwill & Intangible Net | |
| **NON-CURRENT ASSETS TOTAL** | 5,244,224.53 |
| **ASSETS TOTAL** | **5,840,568.07** |

**LIABILITIES**

**CURRENT LIABILITIES**

| | |
|---|---|
| Accounts Payable Total | -2,574,239.35 |
| Unearned / Deferred Income Tot | -2,166,328.64 |
| Accrual Total | -250,000.00 |
| Tax Liabilities Total | -392,207.84 |
| Employee's Entitlements Total | -1,412,815.54 |
| Borrowings Total | -1,300,024.30 |
| **CURRENT LIABILITIES** | -8,095,615.67 |

**NON-CURRENT LIABILITIES**

| | |
|---|---|
| Lease Liability Total | -1,183,988.50 |
| Hercules Loan Payable | note 2 |
| **NON-CURRENT LIABILITIES** | -1,183,988.50 |
| **LIABILITIES TOTAL** | **-9,279,604.17** |

note 1: Hercules Loan Payable is a joint and several
obligation of all entities, but is listed for GAAP purposes on
the Spa Chakra, Inc. and consolidated balance Sheet

# SCHEDULE 1007-4

## SCHEDULE 1007-4: PENDING OR THREATENED LITIGATION

**Although the Debtors are involved in several litigation matters, the only matters where there is a pending or threatened litigation where a judgment or a seizure of its property may be imminent involving Spa Chakra, Inc. and/or its affiliates is:**

1. <u>Circle Block Partners, LLC v. Spa Chakra, LLC, Spa Chakra Indiana LLC and Spa Chakra, Inc. – 49D12-0907-CT-033774</u>: This matter was filed on July 17, 2009, in the Marion County Superior Court in the State of Indiana, asserting claims for breach of the lease, breach of the guaranty and ejectment for the spa property located in the Conrad Indianapolis hotel. Spa Chakra and Circle Block partners entered into a settlement agreement and subsequent amended settlement agreement, dated October 9, 2009, whereby Spa Chakra agreed to pay Circle Block $57,263.69 plus all CAM, parking, expenses and rent for July, September, October and November 2009 by November 30, less a $13,000 payment made to Circle Block on October 13, 2009. This amount is past due, and Spa Chakra received a formal notice of default on December 4, 2009 which requires payment by 5:00 p.m. on December 9, 2009. In the event that Spa Chakra does not cure, Circle Block and Spa Chakra have also executed an agreed judgment for eviction whereby Circle Block would be granted immediate possession of the premises and awarded $300,000. Circle Block had the right to submit the judgment to the court on December 10, 2009.

# SCHEDULE 1007-5

Schedule 1007-5

Senior Management of Spa Chakra, Inc.

Tenure, Responsibility and Experience

1. **Michael Canizales** – *Founder, Chief Executive Officer and Chairman of the Board of Directors*. Mike served nine years in various executive positions with Microsoft in the USA and Australia. Mike's key accomplishments at Microsoft include:

   - Managing the recruitment efforts for over 15,000 Microsoft employees across all disciplines during Microsoft's highest growth periods.
   - Establishing competency-based HR processes and tools worldwide.
   - Serving as a founding executive in charge of Finance, IT, HR, and Operations at ninemsn, a joint venture of Microsoft and PBL, Australia's largest publishing company. Ninemsn has grown to become Australia's leading Internet portal.

   Mike holds a BA from the University of Puget Sound.

2. **Harris Mylonas** – *Founder, Executive Director and Board Member*. Harris is in charge of all architecture and design. Prior to joining Spa Chakra, Harris spent more than a decade in five-star hospitality companies including Hilton Hotels. He has extensive experience in food & beverage, front office, and rooms division. Harris earned a Bachelor of Science Degree with a Major in Hospitality Management from N.I.T. Australia.

3. **Meredith Quarnstrom** – *Chief Operating Officer*. Meredith began her tenure with Spa Chakra in February 2008 after a 12-year tenure with Hilton Hotels Corporation where she ultimately held the position of Vice President of Food and Beverage and helped redefine Hilton Restaurants through partnerships with various successful restaurateurs and aggressive operational improvements. Meredith also held various Food and Beverage roles as well as General Manager positions in both Atlanta and Virginia, receiving multiple awards for both revenue and quality improvement. In the partnership between Spa Chakra and Hilton Hotels to develop leading spa and fitness services within the Hilton family, Meredith's experience naturally aligned with Spa Chakra's model. Her familiarity with the hospitality world coupled with her dedication to health and wellness complement the already dynamic Spa Chakra leadership team. Meredith holds a B.A. from George Mason University.

4. **Allen Hunt** – *VP Operations and Board Member.* Allen joined Spa Chakra as General Manager in 1998 and has been intimately involved with the development and execution of Spa Chakra's launch strategies and expansion initiatives. Allen brings over 27 years' experience with five-star International Hotel brands including Hyatt, Hilton International, Ritz Carlton, and Hayman Island Resorts. Allen's diverse experience in Rooms Division andFood & Beverage Operations, together with Sales & Marketing, Logistics, and Customer Service Development, has helped the company ensure operational excellence and brand consistency. Allen's core competencies include:

   - New Project Development
   - Negotiation & Presentation Management
   - Yield Management
   - Logistics Management
   - Brand Management

5. **Rebecca Siegel Baron** – *General Counsel.* Rebecca started with the Company in August 2008, and has been practicing corporate law in New York since 2001. As an attorney at a major US law firm, she was involved in all aspects of corporate transactional practice representing start-up companies, private equity funds and their portfolio companies, and later-stage private companies with an emphasis on general corporate governance, equity financings, joint ventures, mergers and acquisitions, and fund formation. Rebecca has extensive experience with drafting and negotiating various equity and financing documents including stock and asset purchase agreements, merger and recapitalization agreements, stock option agreements and incentive plans, registration rights agreements, stockholders' agreements, guaranties, security agreements and pledge agreements as well as confidentiality agreements, employment agreements, and other general corporate documentation. As Spa Chakra's General Counsel, Rebecca manages the company's day-to-day corporate and other legal affairs. Rebecca negotiates real estate leases and joint venture and other strategic partnership agreements for the company. In addition, she regularly handles Spa Chakra's intellectual property, immigration, employment, and licensing matters. Rebecca earned a B.A. from Dartmouth College in 1997 and a J.D. from the Georgetown University Law Center in 2001.

6. **Rana Makarem** – *Vice President, Design and Technical Consulting.* Rana began her tenure with Spa Chakra in June 2007. With more than fifteen years' experience in both the public and private sectors, Rana's prodigious project management portfolio includes hospitality, churches, and high-security office buildings for public safety agencies as well as regional government entities. She has also served as Project Manager for the design of high-end custom homes for nearly a decade. Her responsibilities have required her to manage schedules and budgets for multimillion-dollar contracts as well as to coordinate

the design process with local agencies having project jurisdiction and with responsible utility providers.

7. **Tom Pulley** – *Global Controller*. Tom began his tenure with Spa Chakra in September 2008.     Tom has been working in retail since he was 16 years old. With an inherited interest in numbers, he eagerly went into the field of accounting. After graduating from Kean College with a BS in Accounting and Finance, he took a job with Tiffany & Co. in their Accounts Receivable Department, and later in their Accounting Department as Senior Inventory Accountant. Prior to joining Spa Chakra, he had his own retail accounting consulting company where he worked with companies like Olive and Bette's, Aeropostale, and Greg Manning Auctions.

8. **Laurie O'Brien** – *Director of Information Technology*. Laurie joined Spa Chakra in January 2007. With 30 years' professional experience, Laurie has held senior executive positions in a variety of business sectors including electronic imaging services, manufacturing, computer training services, publishing, and distribution. Laurie's past roles have included Controller, Treasurer, Director of Finance and Human Resources— positions that have allowed her to utilize and fine-tune extensive talents in the areas of financial analysis, financial management systems implementation, and business processes and procedures for finance, HR management, and communications. Most recently, Laurie served as Consultant with QueBIT, providing Spa Chakra with what continues to be invaluable assistance surrounding the implementation of COGNOS.

# SCHEDULE 1007-6

Schedule 1007-6

## Estimated Weekly Payroll for Thirty (30) Days Post Filing

### SPA CHAKRA -- Weekly Gross PAYROLL by LOCATION

| | |
|---|---|
| Avalon Spa | 4,200.09 |
| Hilton Short Hills | 33,427.30 |
| Bal Harbour | 3,963.70 |
| Hilton SFO | 8,576.75 |
| Palmer House | 10,502.31 |
| W-A NYC | 11,060.30 |
| 5th Ave | 37,270.59 |
| Marina del Rey | 6,985.50 |
| Call Center | 7,681.13 |
| US Corp | 23,149.46 |
| TOTAL Weekly Spa Chakra | 146,817.12 |

### Monthly Gross Payroll by Location

| | |
|---|---|
| Avalon Spa | 18,060.39 |
| Hilton Short Hills | 143,737.40 |
| Bal Harbour | 17,043.91 |
| Hilton SFO | 36,880.02 |
| Palmer House | 45,159.94 |
| W-A NYC | 47,559.27 |
| 5th Ave | 160,263.53 |
| Marina del Rey | 30,037.65 |
| Call Center | 33,028.84 |
| US Corp | 99,542.68 |
| TOTAL Monthly Spa Chakra | 631,313.63 |

# SCHEDULE 1007-7

Schedule 1007-7

Payments to Officers and Directors for Thirty (30) Days Post Filing

Monthly Gross Payroll

| | |
|---|---|
| Quarnstrom,Meredith | 14,583.33 |
| Mylonas,Harris | 12,500.00 |
| Hunt,Allen | 8,333.33 |
| Canizales,Michael | 23,000.00 |
| TOTAL Monthly Officer's Pay | 58,416.67 |

# SCHEDULE 1007-8

# Spa Chakra 3 Week DIP Budget - Filing Date Dec 10, 2009

| | Week Ending | | 13-Dec Week 1 | 20-Dec Week 2 | 27-Dec Week 3 | 3 Week Total |
|---|---|---|---|---|---|---|
| 1 | Cash Receipts from US spas (Cash Takings — US) | | $ 238,000 | $ 238,800 | $ 238,000 | $ 715,600 |
| 2 | Net Gift Card Sales — US | | $ 75,000 | $ 150,000 | $ 250,000 | $ 475,000 |
| 3 | Room Charge Rent Offset | | $ (43,500) | $ (8,000) | $ (8,000) | $ (59,500) |
| 4 | TSA (consulting) | | $ 177,000 | | | $ 177,000 |
| 5 | On Line Sales | | $ 75,000 | $ 75,000 | $ 120,000 | $ 270,000 |
| 6 | TOTAL IN FROM US OPERATIONS | A | $ 521,500 | $ 455,800 | $ 600,800 | $ 1,578,100 |
| 7 | | | | | | |
| 8 | **International Income / Expenses** | | | | | |
| 9 | Income | | $ 50,000 | $ 150,000 | $ 100,000 | $ 300,000 |
| 10 | Italy Exp | | $ (14,000) | | $ (14,000) | $ (28,000) |
| 11 | Swiss Exp | | $ (20,000) | $ (20,000) | | $ (40,000) |
| 12 | Versailles Exp | | $ (45,000) | $ (45,000) | $ (45,000) | $ (135,000) |
| 13 | **International Net Revenue** | Z | $ (29,000) | $ 85,000 | $ 41,000 | $ 97,000 |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | **Total Collections** | A+Z | $ 492,500 | $ 540,800 | $ 641,800 | $ 1,675,100 |
| 17 | | | | | | |
| 18 | | | | | | $ -- |
| 19 | Payroll Locations | | $ 165,000 | $ 130,000 | $ 130,000 | $ 425,000 |
| 20 | Payroll Corporate | | $ 35,000 | $ 35,000 | $ 35,000 | $ 105,000 |
| 21 | | | | | | $ - |
| 22 | **Total Payroll** | B | $ 200,000 | $ 165,000 | $ 165,000 | $ 530,000 |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | Guerlain Spa, Waldorf=Astoria | * | | | | $ - |
| 26 | Nourish by Spa Chakra San Francisco | * | | | $ - | $ - |
| 27 | Spa Chakra @ Short Hills Hilton | * | $ 19,846 | $ 19,846 | $ 19,846 | $ 59,538 |
| 28 | Spa Chakra 5th Ave | | | | $ 105,000 | $ 105,000 |
| 29 | Spa Chakra at Conrad Indianapolis | * | | | $ - | $ - |
| 30 | Spa Chakra at Marina Del Rey | | | | | $ - |
| 31 | Spa Chakra, Palmer House-A Hilton Hotel | | | | $ 26,333 | $ 26,333 |
| 32 | Marketing and PR | | $ 10,000 | | | $ 10,000 |
| 33 | Apsite Hosting | | $ 2,250 | $ 2,250 | $ - | $ 4,500 |
| 34 | Insurance | | $ 7,758 | $ 6,945 | $ 8,532 | $ 23,235 |
| 35 | Medical | | $ 25,000 | $ 44,000 | $ - | $ 69,000 |
| 36 | Spa Booker | | $ 8,000 | | | $ 8,000 |
| 37 | Guerlain | | $ 20,000 | $ 20,000 | $ 20,000 | $ 60,000 |
| 38 | June Jacobs | | $ 6,462 | $ 6,462 | $ 6,462 | $ 19,385 |
| 39 | Employee Expenses | | $ 31,833 | $ 31,833 | $ 31,833 | $ 95,500 |
| 40 | Bank Credit Card Processing Fees | | | | $ 17,000 | $ 17,000 |
| 41 | Immediate Taxes | | $ 38,000 | $ 18,000 | $ 37,000 | $ 93,000 |
| 42 | Sales Tax | | | | $ 40,000 | $ 40,000 |
| 43 | Misc / Product | | $ 8,000 | $ 8,000 | $ 8,000 | $ 24,000 |
| 44 | Spa Level Occupancy (Utilities, Cleaning, etc) | | $ 15,462 | $ 15,462 | $ 15,462 | $ 46,385 |
| 45 | Spa Level G&A (accounting, licenses, registrations and other) | | $ 17,308 | $ 17,308 | $ 17,308 | $ 51,923 |
| 46 | **Operating Expense** | C | $ 209,918 | $ 190,105 | $ 352,775 | $ 752,799 |
| 47 | | | | | | |
| 48 | **Chapter 11 Expenses** | | | | | |
| 49 | Debtors counsel | | | | | $ - |
| 50 | Debtors consultants | | | | | $ - |
| 51 | Creditors committee professionals | | | | | $ - |
| 52 | Bank counsel | | | | | $ - |
| 53 | Third Party Administrator (401K) | | | | | $ - |
| 54 | Deposits (Utilities, Tel etc) | | $ 30,000 | | | $ 30,000 |
| 55 | DIP Interest/Fees Hercules | | $ 20,327 | $ 327 | $ 327 | $ 20,981 |
| 56 | DIP Interest/Principal Sterling | | | | | $ - |
| 57 | US Trustee fees | | | | | $ - |
| 58 | **Total Chapter 11 Expenses** | D | $ 50,327 | $ 327 | $ 327 | $ 50,981 |
| 59 | | | | | | |
| 60 | **Total Disbursements** | | $ 460,245 | $ 355,432 | $ 518,102 | $ 1,333,780 |
| 61 | | | | | | |
| 62 | | | | | | |
| 63 | **Cash Infusion (DIP)** | | | $ 100,000 | | |
| 64 | Starting Balance (approximate) | | $ 37,963 | $ 70,218 | $ 355,586 | |
| 65 | Shortfall / Surplus Weekly | | $ 32,255 | $ 185,368 | $ 123,698 | |
| 66 | Accumulated (Shortfall) / Surplus | | $ 70,218 | $ 355,586 | $ 479,283 | |
| 67 | | | | | | |
| 68 | | | | | | |