# AUCTION PROCEDURES

The following procedures ("*Auction Procedures*") shall govern the sale ("*Sale*") at auction ("*Auction*") of those assets ("*Assets*") of Spa Chakra, Inc. ("*Parent"*); Spa Chakra, LLC ("*LLC*"); Spa Chakra Indiana, LLC ("*Indiana*"); Spa Chakra Fifth Avenue, LLC ("*Fifth Avenue*"); and Spa Chakra Fifth Avenue Indiana ("*Fifth Avenue Indiana*"), the above-captioned debtors and debtors-in-possession herein (each a "*Debtor*" and, collectively, "*Debtors,*" "*Company,*" or "*Sellers*") subject to the *APA* (defined below) and pursuant to the Debtors' Motion ("*Motion*")[1] for an Order Pursuant to 11 U.S.C. §§ 105(a), 363, 365, 503, and 1146(a) and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, and 9014: (A) Approving the Asset Purchase Agreement; (B) Authorizing the Sale of Certain Assets of the Debtors Free and Clear of All Liens, Claims, and Encumbrances; Authorizing the Assumption and Assignment of certain executory contracts and Leases, and (D) Granting Related Relief ("*Sale Motion*"). These Auction Procedures have been approved and authorized by order dated January 26, 2010 ("*Bidding Procedures Order*") of the United States Bankruptcy Court for the Southern District of New York ("*Bankruptcy Court*") in the chapter 11 cases of the Debtors.

A.    **Assets to be Sold**

The Debtors shall consider bids for all or substantially all of the Assets to one or more bidders. The Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code with any and all liens, claims, and encumbrances to attach only to the proceeds of Sale with the same priority, validity, force, and effect as they existed with respect to the Assets immediately before the closing of the Sale.

B.    **Mailing the Auction and Hearing Notice**

On or before January 27, 2010, the Debtors shall mail the notice of sale of the Assets ("*Auction and Hearing Notice*") by first class mail, postage prepaid, to (a) all potential purchasers identified by the Debtors, (b) the Office of the United States Trustee, (c) John Fredericks, Esq., Winston & Strawn LLP, 101 California Street, Suite 3900, San Francisco, California 94111, counsel for Lender; (c) Michael S. Amato, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, NY 11556-1425, counsel for the Official Committee of Unsecured Creditors ("*Committee*"), (e) all creditors of the Debtors, (f) parties in interest who have requested notice pursuant to Bankruptcy Rule 2002, (g) all known entities holding or asserting a security interest in or lien against any of the Assets, and (h) all government agencies required to receive notice of proceedings under the Bankruptcy Rules. The Debtors shall also publish a copy of the Auction and Hearing Notice in the national edition of either USA Today or the Wall Street Journal.

Any other party in interest that wishes to receive a copy of the Auction and Hearing Notice shall make such request in writing to Debtors' counsel, Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, Attn: Joseph T. Moldovan, Esq., Tel. 212-735-8600, Fax: 917-522-3103.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

### C. **Indication of Interest**

The Debtors shall send a form of confidentiality agreement to any person indicating an interest in participating in the Auction and requesting information about the Assets who has not previously signed a confidentiality agreement.

### D. **Confidentiality Agreement and Selection of Qualified Bidders**

Potential purchasers shall be required to complete and execute the confidentiality agreement and provide the Debtors with their financial qualifications and such other information the Debtors may reasonably request. Such financial information shall include, if available, the most recent audited financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, if available, current audited financial statements of the equity holder(s) of the potential bidder. Potential bidders shall also provide such other financial disclosure acceptable to, and requested by, the Debtors, which information shall demonstrate the financial capability of the potential bidder to consummate the proposed transaction, including, without limitation, commitment letters for any financing required to consummate the proposed transaction. If audited financial statements are not available, potential bidders shall provide such other financial disclosure acceptable to and requested by, the Debtors.

Prior to the Auction, the Debtors must qualify potential purchasers for continuing with the sales process. The Debtors shall promptly notify potential purchasers who have returned the confidentiality agreement and who have satisfactory financial qualifications that they have been selected as a qualified bidder ("***Qualified Bidders***"). The Debtors shall consult with the Committee with respect to qualifying potential bidders.[2]

Qualified Bidders will be allowed to perform reasonable due diligence with respect to the Assets, including reasonable access to the books, records and executives of the Debtors. Interested bidders should contact Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, Attn: Michael Dal Lago, Esq., Tel. 212-735-8757, to seek to become a Qualified Bidder and, thereafter, to request information in connection with their due diligence.

### E. **The Asset Purchase Agreement.**

The Sellers and Hercules Technology II, L.P., a Delaware limited partnership, or an affiliate thereof ("***Buyer***" or "***Hercules***") have entered into an Asset Purchase Agreement, a copy of which is annexed to the Sale Motion as Exhibit C, for the sale of the Assets ("***APA***"). The APA contains certain terms and conditions of the proposed transaction between the Sellers and Hercules. Any Qualified Bidders who wish to submit a bid may obtain a copy of the APA by contacting Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, Attn: Michael Dal Lago, Esq., Tel. 212-735-8757.

---

[2] Any Committee member who or which participates directly or indirectly in the Sale process shall not participate in (or receive any material from the Debtors or the Committee in connection with) any consultation between the Debtors and the Committee provided for in these Auction Procedures.

F. **Form and Content of Bids.**

In order to constitute a "Qualified Bid," the bid must satisfy the following requirements:

(a) The Debtors will accept (i) a bulk bid for all of the Assets ("***Bulk Bid***") or (ii) an individual bid ("***Individual Bid***") for an individual spa facility ("***Spa Facility***").

(b) Any Bulk Bid must be in writing and submitted using a form substantially the same as the APA. The bid shall be made upon terms and conditions substantially similar or better to those contained in the APA (as determined by the Debtors in their reasonable business judgment after consultation with the Committee), and must be accompanied by a "clean" version of the revised agreement, together with a blackline to reflect any proposed changes to the terms and conditions of the APA. A bid for the Assets must be in a net amount, after all adjustments, of at least the sum of the consideration potentially payable under the APA and the ancillary agreements to be entered into in connection therewith, which the Debtors values at approximately $8 million in the aggregate, plus an additional amount equal to the Purchase Price Protection, plus assumed liabilities of at least $2.7 million ("***Stalking Horse Bid***").

(c) Any Individual Bid must be in writing and submitted using a form substantially the same as the APA. The bid shall be made upon terms and conditions substantially similar or better to those contained in the APA (as determined by the Debtors in their reasonable business judgment after consultation with the Committee), and must be accompanied by a "clean" version of the revised agreement, together with a blackline to reflect any proposed changes to the terms and conditions of the APA.

(d) Any bidder shall be required to provide evidence of its financial ability to close and to fund the purchase price.

(e) Any bidder shall be required to provide evidence of its ability to receive all necessary regulatory or any other third party approvals.

(f) The bid must not be conditioned on the outcome of unperformed due diligence by the bidder, the receipt of financing, or any further bidding approval, including from any board of directors, shareholders, or otherwise. Bids shall not be shared among Qualified Bidders (other than Buyer). None of the conditions in the bid shall be materially more burdensome or unfavorable to the Debtors than those set forth in the APA and the proposed Sale Order.

(g) Any Bulk Bid must be accompanied by an earnest money deposit to Debtors' counsel equal to ten percent (10%) of the total proposed purchase price, but not less than $800,000 ("***Bulk Bid Deposit***").

(h) Any Individual Bid must be accompanied by an earnest money deposit to Debtors' counsel equal to ten percent (10%) of the total proposed purchase price, but not less than $100,000 ("***Individual Bid Deposit***" and collectively with the Bulk Bid Deposit, "***Deposits***").

(i) All Deposits shall be in the form of a certified check or wire transfer payable to the trust account of Debtors' counsel by the Bid Deadline (defined below) and should only be sent to the Debtors' Counsel (and not the other parties to receive copies of the bids). Deposits shall be held by counsel for the Debtors in a non-interest bearing account, until they are returned as, and to the extent, provided for herein.

(j) At the conclusion of the Auction, which will be conducted according to the procedure described below, the Debtors in consultation with the Committee will announce the highest and best bid ("**Successful Bidder,**" if Bulk Bid, "**Successful Bidders,**" if the Assets are sold by Individual Bids) and the second highest and best bid ("**Back-Up Bidder,**" if Bulk Bid, "**Back Up Bidders**," if the Assets are sold by Individual Bids). The Successful Bidder(s) and Back-Up Bidder(s) shall supplement their respective deposits by wire transfer or other immediately available funds within one (1) business day so that, to the extent necessary, such deposit equals ten percent (10%) of the aggregate purchase price payable by the Successful Bidder; provided that Buyer may decline to be the Back-Up Bidder. If, for any reason, the Successful Bidder(s) fails to consummate the purchase of the Assets, (i) the Back-Up Bidder(s) will be deemed to have submitted the highest and best bid, and (ii) the Debtors shall be authorized to effect the sale of the Assets to the Back-Up Bidder(s) as soon as is commercially reasonable without further order of the Bankruptcy Court. The Back-Up Bidder(s)'s deposit shall remain the Debtors' counsel's escrow account until the closing.

(k) The bidder shall forfeit the Deposit if (i) the bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtors' selection of the Successful Bidder, or (ii) the bidder is the Successful Bidder and (A) modifies or withdraws the bid without the Debtors' consent before the consummation of the sale contemplated by the bid, or (B) breaches the bid. The Deposit shall be promptly returned to the bidder if the bidder is not determined to be a Qualified Bidder.

(l) Bids must be accompanied by a letter affirmatively setting forth (i) the identity of the bidder (including the authorized representative to attend the Auction), the contact information for such bidder (including e-mail addresses, if available), the identity of the bidder's counsel, and contact information for such bidder's counsel (including e-mail addresses, if available); (ii) the aggregate value of the consideration the bidder proposes to pay under the bid (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), (iii) the form of the Deposit (*i.e.*, cashier's check or wire transfer) made by the bidder, and (iv) its acknowledgement that such bid shall be irrevocable until the earlier to occur of (a) 48 hours after the Assets have been sold by the Debtors pursuant to the Bidding Procedures Order or withdrawn from the Auction by the Debtors, or (b) 5:00 p.m. on the thirtieth (30th) day after the entry of an order by the Bankruptcy Court approving another bidder as the Successful Bidder.

(m) Notwithstanding the forgoing, the Buyer shall be for all purposes a Qualified Bidder, and its Bid pursuant to the APA shall be a Qualified Bid.

G.  **Time for Submission of Bids.**

Any Qualified Bidder that desires to make a bid and to become an Actual Bidder (as defined below) shall deliver a copy of its bid and Adequate Assurance Package, including an executed asset purchase agreement, to (a) Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, Attn: Joseph T. Moldovan. Esq., Tel. 212-735-8757 and (b) John Fredericks, Esq., Winston & Strawn LLP, 101 California Street, Suite 3900, San Francisco, California 94111; so as to be **actually received no later than 12:00 noon New York City Time on February 23, 2010** ("*Initial Bid Deadline*").

H.  **The Auction**

The auction ("*Auction*") shall commence at 10 a.m. New York City Time on February 24, 2010 at the offices of Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022 (or such other location as may be announced by the Debtors). Only Qualified Bidders who submit Qualified Bids ("*Actual Bidders*") as well as Buyer will be permitted to participate in the Auction, and they shall appear in person, or through a duly authorized representative, at the Auction.

Bidding shall take place as follows:

(a) First, bids will be accepted on individual Spa Facilities that are the subject of Individual Bids received.

(b) At the beginning of the Auction, the Debtors, in consultation with the Committee, will announce the highest and best Individual Bid received for a particular facility prior to the commencement of bidding and such Individual Bid will set the floor for any subsequent bids. Bidding will be by Spa Facility in alphabetical order. Only Spa Facilities that are the subject of Individual Bids will be auctioned in this manner.

(c) Actual Bidders who have complied with the Bidding Procedures may improve their bids at the Auction ("*Increased Bids*"), in increments of at least $50,000 (as such bidding increment may be modified by the Debtors, in consultation with the Committee, at the Auction).

(d) After the completion of bidding on each Spa Facility that is the subject of Individual Bids at the Auction, the Debtors, in consultation with the Committee, shall determine which of the Qualified Individual Bids or Increased Individual Bids constitutes the highest and best bid for the Spa Facility. The Debtors shall inform each of the Actual Bidders of the decision regarding who is the highest bidder for each Spa Facility ("*Highest Facility Bid*") and move to the next Spa Facility subject of an Individual Bid.

(e) At the conclusion of all bidding based upon Individual Bids, the Debtors, in consultation with the Committee, shall review and total all Highest Facility Bids ("*Total Facility Bids*"). If the Total Facility Bids is below the Stalking Horse Bid or any higher and better Qualified Bulk Bid received, there shall be no sale of individual Spa Facilities and the auction will continue with Bulk Bids only.

(f) Only Qualified Bidders who have provided a Bulk Bid Deposit shall be permitted to proceed to the next round of the Auction.

(g) Second, the Bulk Bid phase of the Auction will proceed with the minimum bid being the highest of (i) the Total Facility Bids, (ii) the Stalking Horse Bid, or (iii) the highest and best Bulk Bid as determined by the Debtors, in consultation with the Committee.

(h) Actual Bidders who have complied with the Bidding Procedures may improve their bids at the Auction in increments of at least $50,000 (as such bidding increment may be modified by the Debtors, in consultation with the Committee, at the Auction). Should overbidding occur, the Buyer shall have the right, but not the obligation, to participate in the bidding, including by credit bidding up the amount of $13,764,081.55, the amount of its secured debt, plus all amounts loaned and obligations incurred by the Debtors under the DIP Financing provided by Buyer, and to be approved as the Successful Bidder at the Sale Hearing based on any such subsequent overbid. At the conclusion of all bidding based upon Bulk Bids, the Debtors, in consultation with the Committee, shall review the Bulk Bids and determine which Bulk Bid constitutes the highest and best Bulk Bid for the Assets. The Debtors shall inform each of the Actual Bidders of the decision regarding who is the highest Bulk Bid ("**_Highest Bulk Bid_**").

## I. Selection of Successful Bidder(s)

After the completion of the Bulk Bid phase of Auction, the Debtors shall review and consider each of the Qualified Bids, including that of Buyer, and any Increased Bids. The Debtors shall determine, in consultation with the Committee, which of the Qualified Bids or Increased Bids constitutes the highest and best bid for the Assets. At the conclusion of the Auction, the Debtors shall inform each of the Actual Bidders of the decision regarding who is the Successful Bidder(s).

## J. Objections

Objections, if any, to the Sale Motion and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel, Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, Attn: Joseph T. Moldovan. Esq., Tel. 212-735-8757, facsimile: 917-522-3103, (b) counsel to the Buyer, John Fredericks, Esq., Winston & Strawn LLP, 101 California Street, Suite 3900, San Francisco, California 94111, (c) counsel to the Creditors Committee, Michael S. Amato, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, NY 11556-1425, and (d) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (collectively, "**_Notice Parties_**"), so as to be actually received by 4:00 p.m., New York City Time on February 23, 2010 ("**_Objection Deadline_**").

## K. Failure to Consummate Purchase

If for any reason the Successful Bidder(s) fails to consummate the purchase of the Assets, then the Back-Up Bidder(s) will automatically be deemed to have submitted the highest and best bid.

If such failure to consummate the purchase is the result of a breach by the Successful Bidder(s), the Deposit shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

L.  **Bankruptcy Court Approval of the Successful Bidder(s) and Closing**

A hearing on any objections including Cure Objections to the sale and transfer of the Assets to the Successful Bidder(s) or the Back-Up Bidder(s), as applicable, and to confirm the results of the Auction as it relates to the sale of the Assets, shall be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 on February 25, 2010 at 10:00 a.m. New York City Time ("*Sale Hearing*").

In the event that that the Sale is to be made based upon the Total Facility Bids and not a single Bulk Bid, the Debtors will also ask the Court at the Sale Hearing to authorize them to sell the Assets to the party making the Highest Bulk Bid or the Back-up Bidder in the event that that as a result of any default by any the Successful Bidders or failure of any of the Successful Bidders to close, the aggregate consideration to be received by the Debtors under the Total Facility Bids is less than the Highest Bulk Bid.

M.  **Return of Deposits**

Within ten (10) business days after the entry by the Bankruptcy Court of the Sale Order, the Deposit submitted by all Qualified Bidders, except (i) the Successful Bidder(s); (ii) the Back-Up Bidder(s); (iii) in the event the condition stated in the second paragraph of Section L above has occurred, the party making the Highest Bulk Bid and the party who would have been then Back-Up Bidder; and (iv) any bidders that forfeit their Deposit under Section F above, shall be returned.

N.  **Business Judgment of the Debtors**

The Debtors reserves the right in consultation with the Committee (a) to determine in the reasonable exercise of their business judgment whether the amendments and changes contained in each bid are acceptable as terms and conditions to sell; (b) to determine, in the reasonable exercise of their business judgment, which Qualified Bid, if any, is the highest and best offer; (c) to determine in their reasonable business judgment the value that should be ascribed to any Qualified Bid relative to any other Qualified Bid; and (d) to reject at any time prior to entry of an order of the Bankruptcy Court approving the Successful Bidder(s), any bid (other than Buyer's bid) that the Debtors, in the reasonable exercise of their business judgment, deem to be (i) inadequate or insufficient, or (ii) not to conform with the requirements of the Bankruptcy Code or the Auction Procedures. The Debtors also reserve the right to adjourn the Auction and the Sale Hearing from time to time; provided, however, that absent the consent of Buyer, the Auction shall not be adjourned beyond February 24, 2010.

O.  **Reservation of Rights**

With the consent of Buyer, and in consultation with the Committee, the Debtors reserve the right to (i) impose additional terms and conditions applicable to all Qualified Bidders at or prior to the

Auction, (ii) extend the deadlines set forth in the Auction Procedures and/or adjourn the Auction at the Auction and/or the Sale Hearing in open court without further notice, and (iii) reject any or all bids (other than the APA) if, in the Debtors' reasonable business judgment, no bid is for a fair and adequate price.