Matthew I. Kliegman
Bingham McCutchen LLP
399 Park Avenue
New York, NY
Telephone: 212-705-7000
Facsimile: 212-752-5378

Anna M. Boelitz
Bingham McCutchen LLP
One State Street
Hartford, CT
Telephone: 860-240-2700
Facsimile: 860-240-2800

*Counsel to Guerlain, S.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| SPA CHAKRA, INC., et al., | Case No. 09-17260 (SMB) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF GUERLAIN, S.A. TO MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES**

Guerlain, S.A. ("Guerlain"), by and through its undersigned counsel hereby files this limited objection (the "Limited Objection") to the *Motion of the Debtors for an Order Pursuant to 11 U.S.C. §§ 105(A), 363, 365, 503, and 1146(A) and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9008, and 9014: (i) Approving the Asset Purchase Agreement; (ii) Authorizing the Sale of Certain Assets of the Debtors Free and Clear of All Liens, Claims and Encumbrances; (iii) Authorizing Assumption and Assignment of Certain Executory Contracts*

*and Leases; (iv) Approving Auction Procedures Related Thereto; and (v) Granting Related Relief* [Doc. No. 79] (the "Sale Motion"), and in support of its Limited Objection, respectfully submits as follows:

## I. BACKGROUND

**A. Procedural Background**

1. On November 30, 2009, an involuntary petition under chapter 7 of title 11 of the United States Code (as amended, the "Bankruptcy Code") was filed against Spa Chakra Fifth Avenue, LLC. On December 9, 2009, Spa Chakra Indiana LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2009, Spa Chakra, Inc., Spa Chakra, LLC, and Spa Chakra Fifth Avenue Indiana LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 22, 2009, this Court entered an order converting the involuntary case to a voluntary case under chapter 11.

2. The bankruptcy cases of the above-referenced entities (collectively, the "Debtors") are being jointly administered pursuant to an order of this Court dated December 11, 2009 [Doc. No. 11].

3. On January 15, 2010, the Debtors filed the Sale Motion.

4. On January 26, 2010, this Court entered its Order Approving Auction Procedures in Connection with the Debtors' Motion for (I) Authority to Sell Assets, and (II) Approval of the Auction Procedures Related Thereto [Doc. No. 112] (the "Sale Procedures Order") authorizing and establishing certain auction procedures and providing, among other things, that (i) an auction to sell all or substantially all of the Debtors' assets shall be held on February 24, 2010 (the "Auction"), and (ii) a hearing on any objections to the sale and transfer of assets to the successful bidder(s) shall be held on February 25, 2010 (the "Sale Hearing").

5. The Sale Procedures Order establishes Hercules Technology II, L.P. ("Hercules") as a stalking horse bidder and contemplates that the Debtors' assets may be sold to one or several

bidders. In addition, the sale procedures approved by the Court contemplate that the Debtors may assume and assign executory contracts to the successful bidder(s).

6. On February 17, 2010, the Debtors filed a *Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Assets* (as amended on February 18, 2010, the "<u>Notice of Assignment</u>"), listing the contracts the Debtors intend to assume and assign to Hercules or the successful bidder or bidders at the Auction.

**B.** **<u>The Agreement</u>**

7. The Debtors manage luxury health and wellness spas in the United States, Europe and Asia. Spa Chakra, LLC ("<u>Spa Chakra</u>") and Guerlain are party to a Spa Master Agreement effective as of January 1, 2008, which establishes the terms and conditions under which Spa Chakra shall operate authorized spas and use certain Guerlain intellectual property and products (the "<u>Agreement</u>"). (A copy of the Agreement is attached hereto as <u>Exhibit A</u>).

8. The Agreement is a comprehensive arrangement whereby Spa Chakra operates spas as authorized by Guerlain and in accordance with guidelines established by Guerlain. The Agreement governs, among other things, the process for approval of prospective spa locations, the maintenance of the Guerlain image, the sale, advertising and promotion of Guerlain products, and the terms and conditions of Spa Chakra's use of certain Guerlain intellectual property and proprietary business methods.

9. The Notice of Assignment lists the Agreement as one of the contracts to be assumed and assigned to Hercules and incorrectly states that Guerlain has agreed to a cure amount of $201,025 in connection with such assumption.

**II.** **<u>LIMITED OBJECTION</u>**

10. Guerlain does not object generally to the sale of the Debtors' assets, however, Guerlain objects and does not consent to the assumption and/or assignment of the Agreement without Guerlain's consent. Guerlain has been in discussions with Hercules regarding the potential terms of a consensual assignment of the Agreement to Hercules, including the amount

-3-
A/73286784.6/2022529-0000341293

of cure, and amendments to the Agreement. At the time of filing of this Limited Objection, the terms of a consensual assignment have not been finalized and accordingly, Guerlain does not consent to the assignment to Hercules nor does it agree with the proposed cure amount listed in the Notice of Assignment. Guerlain has not had the opportunity to consider assignment of the Agreement to any party other than Hercules and therefore also objects to assumption and assignment of the Agreement to any other party.

11. The Agreement (i) is an agreement for personal services and is an agreement where the identity of the parties is central to the obligations and (ii) governs the use of trademarks, proprietary business methods and other intellectual property belonging to Guerlain. Accordingly, section 365(c) prevents the assumption and assignment of the Agreement without Guerlain's consent. Moreover, the Auction schedule and Sale Hearing schedule will not permit Guerlain or the Court sufficient time to evaluate whether the successful bidder can perform under the Agreement. Finally, even if the Agreement could be assigned, there are substantial defaults under the Agreement which must be cured as a condition to assumption and assignment.

12. Section 365(c) of the Bankruptcy Code provides that the trustee, or debtor in possession, may not assume or assign any executory contract, whether or not the contract prohibits or restricts assignment, if (1) applicable nonbankruptcy law excuses the nondebtor party from accepting performance from or rendering performance to an entity other than the debtor in possession; and (2) the nondebtor party does not consent to such assumption or assignment. 11 U.S.C. § 365(c).

A. **The Debtors May Not Assume or Assign the Agreement Because the Relationship of the Parties is Central to the Obligation**

13. The purpose of the exception contained in 365(c) is to "prevent the [debtor in possession] from forcing a party to accept performance from, or provide performance to, someone other than the party with whom it contracted in those situations where the identity of the party is central to the obligation." In re Midway Airlines, Inc., 6 F.3d 492, 495 (7th Cir. 1993). The Agreement falls squarely within the scope of Section 365(c). The Agreement is a

highly specialized performance contract and the identity of the party using Guerlain's trademarks and business methods, and selling its products, is central to the Agreement. See, e.g., Agreement, § 6.4, p.8 ("Spa Chakra undertakes to maintain the Spas . . . in such state of attractiveness and consistent with a luxurious image so as not to depreciate the image of Guerlain"). Moreover, the Agreement specifically provides that:

> Spa Chakra acknowledges that Guerlain and the Trademarks enjoy an extremely valuable reputation and goodwill for products and services of high, refined and luxurious quality. . . . [A]ll uses of the Trademarks shall at all times be fully consistent with and not detract in any way from this reputation and goodwill and Guerlain shall have no obligation to approve any use of the Trademarks not consistent with this standard.

Agreement, § 18.4, p.20.

14. Guerlain provides specialized luxury health and beauty products and spa services and its business depends on the value of its reputation and brand image as a leader in the field. Guerlain has made substantial investments in establishing and maintaining its century-old luxury brand. In order to sustain and enhance its reputation and brand, Guerlain contracts with entities having similar reputations for high quality and service, capable of meeting the variety of requirements in its operational guidelines. It is a premise of the Agreement that Spa Chakra was renowned "for its five star delivery of therapeutic and healing treatment". See Agreement, Recital 2, p. 4. To permit the Agreement to be assigned would frustrate its overriding purpose and substantially prejudice the interests of Guerlain.

**B.  The Debtors May Not Assume or Assign the Agreement Because it Contains a Right to Use Certain Intellectual Property**

15. Guerlain is the owner of certain intellectual property, including trademarks registered in accordance with the Lanham Act 15 U.S.C. § 1051 et seq. (the "Trademarks"), trade secrets and proprietary business methods. Pursuant to Article 18 of the Agreement, Guerlain

granted Spa Chakra a right to use the Trademarks in the operation of authorized spas.[1] Under applicable trademark law, the right to use trademarks is not assignable without the consent of the trademark owner.  See, 15 U.S.C. § 1115 (registration is prima facie evidence of registrant's exclusive right to use trademark and is conclusive evidence of such right upon registration becoming incontestable pursuant to the Lanham Act); id., § 1114 (establishing liability of persons using mark in commerce without registrant's consent); see, also, El Greco Leather Products Co. Inc. v. Shoe World, Inc., 806 F.2d 392, 395 (2d Cir. 1986) ("[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark."); Tap Publications, Inc. v. Chinese Yellow Pages (New York) Inc., 925 F. Supp. 212, 218 (S.D.N.Y. 1996) ("the general rule is that unless the license states otherwise, the licensee's right to use the licensed mark is personal and cannot be assigned to another." (internal quotations, citation omitted); Nature's Bounty Inc. v. Basic Organics, 432 F. Supp. 546, 551 (E.D.N.Y. 1977) ("[o]wnership of the registered trademark is prima facie evidence of the registrant's exclusive right to use the mark."). The principle that trademarks are not freely assignable without the registrant's consent has been recognized in the bankruptcy context.  See In re Travelot, Co., 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002) ("[t]he grant of a non-exclusive license is an assignment in gross, that is, one personal to the assignee and thus not freely assignable to a third party." (internal quotations, citations omitted)); N.C.P. Marketing Group, Inc. v. Blanks, 337 B.R. 230, 236 (Bankr. D. Nev. 2005) ("[b]ecause the owner of the trademark has an interest in the party to whom the trademark is assigned so that it can maintain the good will, quality, and value of its products and thereby its trademark, trademark rights are personal to the assignee and not freely assignable to a third party.").

---

[1] For example, and without limitation, the Agreement governs Spa Chakra's use of the trademark "Guerlain" registered with the United States Patent and Trademark Office under Registration number 1942534.  Copies of representative registration certificates for trademarks covered by the Agreement are attached as Exhibit B hereto.

16.  The use of the Trademarks and other Guerlain intellectual property is an integral part of the Agreement.  The use of such intellectual property is intertwined with the Agreement such that it cannot properly be assigned without infringing Guerlain's interest in maintaining the good will, quality and value of its products, brand and Trademarks.

**C.  The Debtors Cannot Assume the Agreement Unless all Defaults are Cured**

17.  Even if the Court were to determine that the Agreement can be assumed and assigned without Guerlain's consent, the Agreement cannot be assumed without curing substantial defaults.  Section 365 of the Bankruptcy Code provides that if the debtor has defaulted on a contract prior to assumption, the debtor cannot assume that contract unless it: (1) cures the default; (2) compensates the nondebtor party for any actual pecuniary losses resulting from the default; and (3) provides adequate assurance of future performance under the contract.  11 U.S.C. § 365(b).  As made clear by the amendments effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, with the limited exception of penalty rates and penalty provisions, the debtor is required to cure all nonmonetary defaults as well.  Id.  See In re Empire Equities Capital Corp., 405 B.R. 687, 690-91 (Bankr. S.D.N.Y. 2009) ("In 2005 Congress revised the language of § 365(b)(2)(D) by including the word 'penalty' as a modifier to the word 'provision,' making it clear that most non-monetary defaults are not exempted from the cure requirements.").

18.  There exist substantial monetary defaults under the Agreement, including approximately $234,080 in past due invoices, which must be cured as a condition to assumption and assignment of the Agreement.  See, 11 U.S.C. § 365(b).  The cure amount proposed in the Notice of Assignment is insufficient, absent the consent of Guerlain, to cure this default.  Because Guerlain has not consented to assignment of the Agreement, it may not be assumed and assigned to Hercules or any other party or parties.

A/73286784.6/2022529-0000341293

D.   **The Debtors Cannot Assign the Agreement Because Adequate Assurance Cannot be Provided**

19.   Even if the Court were to determine that the Agreement may be assumed, the Debtors must provide adequate assurance of future performance by the proposed assignee of the Agreement (i.e., the successful bidder(s) at the Auction).  11 U.S.C. § 365(f)(2)(B).  This would entail not only assurances as to the proposed assignee's financial capabilities, but also the proposed assignee's ability to meet nonmonetary requirements under the Agreement, including the maintenance of the Guerlain image and brand, the location of proposed spas, advertising and promotion, product exclusivity and use of Guerlain intellectual property.   Many of the Debtor's obligations that are central to the Agreement are of a qualitative nature and relate to the enhancement of the Guerlain brand through appropriate use of Guerlain's products, methods and trademarks in a manner that is consistent with the Guerlain brand.  Because the Sale Hearing is scheduled for the day following the Auction, Guerlain will not have sufficient time to evaluate the proposed assignee's abilities to satisfy the Agreement's requirements.

### III.   CONCLUSION

WHEREFORE, Guerlain respectfully objects to the Debtors' Sale Motion to the extent that it purports to affect any right of Guerlain under the Agreement or to effect the assumption or assumption and assignment of the Agreement without Guerlain's consent.

A/73286784.6/2022529-0000341293

| | |
|---|---|
| Dated: Hartford, Connecticut<br>February 23, 2010 | **BINGHAM McCUTCHEN LP**<br><br>Matthew I. Kliegman<br>matthew.kliegman@bingham.com<br>399 Park Avenue<br>New York, NY 10022<br>Telephone: 212-705-7000<br>Facsimile: 212-752-5378<br><br>By: /s/ Anna M. Boelitz<br>Anna M. Boelitz<br>anna.boelitz@bingham.com<br>One State Street<br>Hartford, CT<br>Telephone: 860-240-2700<br>Facsimile: 860-240-2800<br><br>*Counsel to Guerlain, S.A.* |