**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
John D. Fredericks, Esq.
Brian Y. Lee, Esq.
Jacqueline M. Patzelt-Russo, Esq.

Attorneys for Hercules Technology II, L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | |
|---|---|
| In re : | |
| : | Chapter 11 |
| **SPA CHAKRA, INC. , *et. al*.,**[1] : | |
| : | Case No. 09-17260 (SMB) |
| : | |
| Debtors. : | (Jointly Administered) |

------------------------------------------------------------ x

**RESPONSE OF HERCULES TECHNOLOGY II, L.P. TO OBJECTIONS
TO DEBTOR'S MOTION FOR AN ORDER (I) APPROVING THE ASSET PURCHASE
AGREEMENT; (II) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE
DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (III)
AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND LEASES; (IV) APPROVING AUCTION PROCEDURES RELATED
THERETO, AND (V) GRANTING RELATED RELIEF**

Hercules Technology II, L.P. ("Hercules") hereby responds to the objections filed by the Official Committee of Unsecured Creditors (the "Committee") and by GVK Limited Partners ("GVK"), a member of the Committee, to the Debtors' motion for entry of an order (i) approving the Asset Purchase Agreement, (ii) authorizing the sale of certain assets of the Debtors free and clear of all liens, claims, and encumbrances, (iii) authorizing assumption and assignment of certain executory contracts and leases, (iv) approving auction procedures related thereto, and (v)

---

[1] The Debtors are the following entities: Spa Chakra, Inc., a Delaware corporation; Spa Chakra, LLC, a Delaware limited liability company; Spa Chakra Indiana, LLC, an Indiana limited liability company; Spa Chakra Fifth Avenue, LLC, a Delaware limited liability company; and Spa Chakra Fifth Avenue Indiana, LLC, an Indiana limited liability company.

granting related relief (the "Sale Motion"). In support of the Sale Motion, Hercules represents as follows:

1. The absence of any viable competing bids for the Debtors' business presents the Debtors' estates and stakeholders with two stark alternatives: (1) proceed with the proposed sale transaction that, if consummated, would preserve the going-concern value of the Debtors' business, save hundreds of jobs, and maximize recovery for many creditors, including unsecured creditors that would otherwise be completely out of money; or (2) immediately liquidate these estates in chapter 7, which would be a disastrous result for the Debtors' estates, their creditors, employees, and suppliers, all of whom would likely get nothing. Despite these dire business realities, the Committee and GVK have objected to the proposed sale, raising essentially two points: first, that the price to be paid by Hercules is too low; and second, that the sale is a sub rosa plan. Both arguments fail.

2. First, the argument that the price is too low is simply speculative. The purchase price offered by Hercules has been tested by the market. In that connection, Hercules expects the Debtors to present at the sale hearing evidence of its substantial marketing effort, in compliance with the bid procedures, which ultimately did not yield any bid. That should be an indication of the fairness of the purchase price offered by Hercules. Moreover, the purchase price is supported by the opinion of an independent valuation expert retained by the Debtors. According to the expert, the enterprise value of the Debtors' business is between $5.4 million and $7.7 million. Hercules' current offer (even without consideration of the value of the assumed liabilities) already exceeds even the high range of that estimate.

3. In any event, if the sale is not approved, there will be an imminent loss of value of these assets, and the going concern value will not be preserved. Thus, it is unlikely that there

will be another opportunity to sell these assets to a willing purchaser for an aggregate purchase price sufficient to satisfy Hercules' secured claims, much less to also provide benefit to unsecured creditors. In contrast, approval of the sale will result in the preservation of the business and jobs, and the assumption of millions in liabilities. Moreover, in connection with the sale, Hercules would give the Debtor an option to analyze and evaluate the value of two significant causes of action, and provide $50,000 in funding for litigation if the Debtors choose to pursue those claims. The recovery for those claims, in addition to the avoidance recovery, could be used to fund distribution to unsecured creditors. There should be no question that the benefits to be provided by Hercules for the proposed sale transaction would exceed the estates' potential recovery under any other alternatives.

4. The argument that the sale is a *sub rosa* plan must also fail. The idea underlying the prohibition against *sub rosa* plans appears in PGGC v. Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983), *reh'g denied*, 705 F.2d 450 (5th Cir. 1983), which held that "the debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets." Id. at 940. Therefore, a sale may be objectionable if it dictates the terms of the ensuing plan, or constrains the parties in exercising their confirmation rights, or if it seeks to allocate the distribution of sale proceeds among different classes of creditors.

5. None of those factors are present here. The proposed sale to Hercules does not dictate the terms of a plan, restrain or alter anyone's right with respect to confirmation, or seek to allocate the distribution to unsecured creditors. It merely seeks to preserve the value of the estates for the benefit of all stakeholders, and could potentially result in recoveries for unsecured creditors in a case where they appear completely out of money.

6. A sale is not simply a *sub rosa* plan because it does not generate enough proceeds to pay all classes of creditors. See In re General Motors Corp., 407 B.R. 463, 495-96 (Bankr. S.D.N.Y. 2009) (holding that a sale is not a *sub rosa* plan simply because the value the sale generated is not enough for a dividend to certain groups of creditors). Neither is the fact that all of the proceeds from the sale would go to the Debtors' principal secured creditor a reason to deny the sale. See e.g., In re Chrysler, LLC, 405 B.R. 84 (Bankr. S.D.N.Y. 2009) (sale approved even though first lien lenders were sole beneficiaries of proceeds of sale); U.S. Trustee v. GPA Technical Consultants, Inc., 106 B.R. 139 (Bankr. S.D. Ohio 1989) (sale allowed even though sale proceeds would only be used to satisfy secured creditors); In re Western Pacific Airlines, Inc., 218 B.R. 590 (Bankr. D. Colo. 1998) (same).

7. Where, as here, the sale benefits employees, consumers, and numerous creditors and counter-parties to executory contracts, there is simply no legitimate question that the sale is in the best interests of these estates and must be approved. In contrast, should the sale not be approved, Hercules anticipates that it will immediately move for relief from the automatic stay to pursue its remedies against its collateral. Such an outcome will generate virtually no recovery for unsecured creditors, leaving no prospect for any future reorganization plan anyway.

8. In short, while there may be uncertainty regarding the Debtors' ultimate ability to confirm a plan of reorganization following a sale, there is no legitimate question regarding the harm to the estate and all of its stakeholders should the sale not be approved, and the Debtors' business shut down and liquidated. The Debtors are not required to establish the viability of a confirmable plan at this stage of the proceedings. On the contrary, the Debtors' inability to confirm a plan of reorganization now, when a sale is the only option for preserving the going concern value of the Debtors' business, is justification for approving a sale of substantially all of

the debtors' assets under Section 363.  See In re General Motors Corp., 407 B.R. 463 (sale justified where there is a need to preserve going concern value because revenues are not sufficient to support continued operations of debtor's business and there are no viable sources of financing).

## **CONCLUSION**

For the reasons stated above, the Sale Motion should be approved, and all objections thereto should be overruled.

**WINSTON & STRAWN LLP**

By: */s/ Jacqueline M. Patzelt-Russo*
  Jacqueline M. Patzelt-Russo (JR-7746)
  200 Park Avenue
  New York, New York 10166
  Telephone:  (212) 294-6700
  Facsimile:  (212) 294-4700