UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re                                   :
                                        :   Chapter 11
SPA CHAKRA, INC. , *et. al.*,[1]        :
                                        :   Case No. 09-17260 (SMB)
                                        :
                       Debtors.         :   (Jointly Administered)
------------------------------------------------------------- x

**ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, 503, AND 1146(A) AND FED. R. BANKR. P. 2002, 6004, 6006, 9008, AND 9014: (i) APPROVING THE ASSET PURCHASE AGREEMENT; (ii) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (iii) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES, AND (iv) GRANTING RELATED RELIEF**

Upon consideration of the relief requested in Part II of the Debtors'[2], motion dated December 26, 2009 ("***Motion***") pursuant to Sections 105(a), 363, 365, 503, and 1146(a) of Chapter 11 of title 11 of the United States Code ("***Bankruptcy Code***") and Rules 2002, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure ("***Bankruptcy Rules***"), for an order authorizing and approving a sale of the Assets free and clear of liens, claims, and encumbrances upon the terms and conditions set forth in the Asset Purchase Agreement (as amended, modified, and/or supplemented from time to time, "***APA***"), annexed to this Order as Exhibit "A," between the Debtors, on the one hand, and Hercules Technology II, L.P., a Delaware limited partnership, or an affiliate thereof ("***Buyer***" or "***Hercules***"), on the other hand, and the procedures established pursuant to the Procedures Order (hereinafter defined); and the Court having granted the relief requested in Part I of the Motion pursuant to that Order

---

[1] The Debtors are the following entities: Spa Chakra, Inc., a Delaware corporation; Spa Chakra, LLC, a Delaware limited liability company; Spa Chakra Indiana, LLC, an Indiana limited liability company; Spa Chakra Fifth Avenue, LLC, a Delaware limited liability company; and Spa Chakra Fifth Avenue Indiana, LLC, an Indiana limited liability company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or APA, as applicable.

#2022420 v9 \020504 \0007

Approving Auction Procedures in Connection with the Debtors' Motion for (I) Authority to Sell Assets, and (II) Approval of the Auction Procedures Related Thereto, dated January 26, 2010 ("***Procedures Order***") (ECF Docket # 112), and, in accordance with the Procedures Order, the Debtors having noticed the Auction for February 24, 2010 ("***Auction Date***"), and no Qualified Bids having been received prior to the Auction Date, and the Auction therefore not having been needed or held; and it appearing that Buyer's bid is the highest and best offer received by the Debtors for the Assets to be sold; and the Court having considered the relief requested in Part II of the Motion; and upon the record of the hearing on Part II of the Motion held on February 25, 2010 and March 1, 2010, which incorporated into such record the testimony adduced and proffered during the hearing on Part I of the Motion held on January 26, 2010 ("***Sale Hearing***"), and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (c) notice of the Motion having been duly served in accordance with applicable laws and rules; and **SMB 3/12/10 (d) upon the Memorandum Decision Granting Motion to Sell Assets, dated March 5, 2010;** ~~the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and upon the record of the Sale Hearing, including, without limitation, the reasons set forth by the Court in the record as to why approval of the APA is in the best interests of the Debtors' estate~~; and after due deliberation and sufficient cause appearing therefore,

    **THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. As evidenced by the certificates of service and affidavits of publication filed with the Court and based on the representations of counsel at the Sale Hearing: (i) proper, timely, adequate, and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with Sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules; (ii) such notice was good, sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Sale Hearing or the entry of this Order shall be required.

C. **SMB 3/12/10** ~~As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing, and (iii) the record of this case and all prior proceedings in this case held before the Court, the Debtors (a) marketed the Assets prior to the Petition Date, (b) continued to market the Assets since the Petition Date and, (c) conducted the sale process in compliance with the Procedures Order.~~

D. **SMB 3/12/10** Buyer's bid for the purchase of the Assets, as memorialized in the APA, is the highest and best offer received for the Assets to be sold. The purchase price to be paid by Buyer pursuant to the APA is fair consideration ~~and constitutes reasonably equivalent value~~ for the Assets. ~~as determined by the Debtors' marketing process prior to and since the Petition Date and the Auction.~~

E. **SMB 3/12/10** ~~Buyer is a purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, with respect to the Assets.~~ The APA was negotiated, proposed

#2022420 v9 \020504 \0007

3

and entered into by the parties in good faith, from arms'-length bargaining positions and without collusion and, therefore, Buyer is entitled to the protections of Section 363(m) of the Bankruptcy Code with respect to the Assets. Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the APA to be voided, or for the imposition of costs and damages, under Section 363(n) of the Bankruptcy Code. The sale process and the Auction conducted by the Debtors was fair and reasonable and conducted in good faith, and the outcome of such Auction was not the result of collusive or other unlawful conduct on the part of the Debtors, Buyer, or any third party.

F.   Buyer is not an "insider" of the Debtors, as that term is defined in 11 U.S.C. §101.

G.   The Debtors have articulated good business reasons for consummating the transactions provided for in the APA and for selling the Assets outside of a plan of reorganization, and it is a reasonable exercise of the Debtors' business judgment to consummate the transactions contemplated by the APA. The APA is not a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford, and is not in violation of creditors' voting rights.

H.   **SMB 3/12/10**  ~~The Debtors may sell the Assets to Buyer free and clear of all Liens and Claims (as hereinafter defined) in accordance with Section 363(f) of the Bankruptcy Code and except as explicitly set forth in the APA. As a condition of purchasing the Assets, Buyer requires that the Assets be sold free and clear of all Liens and Claims, except those explicitly and expressly assumed by Buyer in the APA.~~  Except as otherwise explicitly set forth in the APA, the transfer of the Assets to Buyer does not and will not subject Buyer to any liability whatsoever with respect to the operation of the Debtors' business and/or the ownership of the Assets prior to the Closing.

#2022420 v9 \020504 \0007

4

I. **SMB 3/12/10** The transfer of the Assets to Buyer is or will be a legal, valid and effective transfer of the Assets, and will vest Buyer with all **of the Debtors'** right, title and interest in and to the Assets, free and clear of all Liens and Claims pursuant to Section 363(f) of the Bankruptcy Code and all other applicable laws, except with respect to those Liens, Claims and obligations explicitly and expressly assumed by Buyer in the APA (including without limitation, with respect to the Assumed Agreements, as defined below).

J. The Debtors' pre-petition secured lender, Sterling, has consented to the sale of the Assets. Buyer has assumed the Sterling Loan as modified pursuant to a separate agreement between Buyer and Sterling and the Sterling Lien shall attach to the Assets purchased by Buyer pursuant to said agreement. Non-debtor parties[4], holding valid Liens or Claims in or with respect to the Assets who did not object, or who withdraw their objections, to the Motion are deemed to have consented to the sale of the Assets free and clear of their Liens or Claims in or with respect to the Assets pursuant to Section 363(f)(2) of the Bankruptcy Code, and their Liens and Claims shall attach to the proceeds of the Assets with the same priority, validity, force and effect as they existed with respect to the Assets before the Closing Date.

K. The Debtors are authorized to sell, transfer, convey and assign to Buyer all of Debtors' right, title, and interest (including common law rights) to and in all of the intangible property included in the Assets to the broadest extent permitted by law and the terms of the APA.

L. With respect to the Assumed Real Estate Leases and Assumed Executory Contracts under, and as defined in, the APA (collectively, the ***"Assumed Agreements"***), the Court hereby finds and determines that:

---

[4] The Obligations owed by the Debtors to Buyer, as post-petition lender, under the DIP Financing Documents, are being credited to the purchase price under the APA as additional consideration and, thus, are satisfied in connection with the consummation of the Sale of the Assets to Buyer.

#2022420 v9 \020504 \0007

(1) The amount to cure each default or breach under each such Assumed Agreement shall be the amount set forth in the schedules attached hereto as Exhibits "B" and "C" (collectively, the *"Cure Amounts Schedules"*);

(2) The Assumed Agreements to be assigned under the APA remain, and shall be on the Closing Date (subject to any amendments, supplements or modifications, thereto agreed among the Buyer, the Debtors, and the non-Debtor counterparty to the Assumed Agreement), in full force and effect for the benefit of Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer, pursuant to Bankruptcy Code § 365(f);

(3) The failure of any counterparty to an Assumed Agreement to timely object to the assumption and assignment to Buyer of such Assumed Agreement is and shall be consent to such assignment, for purposes of Bankruptcy Code §365(c)(1) and §365(e)(2);

(4) The Debtors shall, on the Closing Date, pay to the counterparty on each Assumed Agreement, in cash, the Cure Amounts set forth on the Cure Amounts Schedules and shall thereby have, (i) cured all defaults (if any) under the Assumed Agreements existing before the date of this Order, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation to any party for any actual pecuniary loss to such party resulting from a default arising before the Closing Date under the Assumed Agreements, if any, within the meaning of 11 U.S.C. § 365(b)(1)(B);

(5) Buyer has provided adequate assurance of its future performance under the Assumed Agreements within the meaning of 11 U.S.C. § 365(b)(1)(C); and

(6) All parties to the Assumed Agreements have been given adequate notice and the opportunity to object to the assumption and assignment of their contracts/leases and the cure amounts proposed by the Debtors.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. All objections to the Motion and the relief requested in Part II therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, are hereby overruled on the merits and denied, except as set forth herein.

2. Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to sell and transfer the Assets to Buyer pursuant to and in accordance with the terms and conditions of the APA and to take all other actions necessary to effectuate the terms thereof and to consummate the transactions contemplated therein without any further authorization of the Court, including, without limitation, (a) taking such actions necessary to execute and deliver all documents referenced in and/or contemplated under the APA, and (b) entering into a transition service or management agreement with Buyer to the extent necessary to deliver certain assets after the Closing Date.

3. **SMB 3/12/10** The Debtor's right, title and interest in and ~~Title~~ to the Assets shall pass to Buyer at Closing pursuant to Section 363(f) of the Bankruptcy Code and all other applicable laws, free and clear of any and all liens (including, but not limited to, mechanics', materialmen's, and other consensual and non-consensual liens and statutory liens), security interests, encumbrances, and claims (including, but not limited to, any "claim" as defined in Section 101(5) of the Bankruptcy Code), ~~reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets,~~

~~recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter ego, environmental, successor liability, tax and other liabilities, causes of action and claims, and in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date and prior to the Closing Date, whether imposed by agreement, understanding, law, equity or otherwise~~ (collectively, "***Liens and Claims***"), except with respect to those Liens, Claims and obligations explicitly and expressly assumed by Buyer in the APA (including, without limitation with respect to the Assumed Agreements and the Sterling Lien and the Sterling Obligations).

4. **SMB 3/12/10** ~~The sale and transfer of the Assets to Buyer pursuant to the APA constitutes a legal, valid, and effective transfer and shall vest Buyer with all right, title, and interest of the Debtors in and to the Assets~~.

5. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned on the Closing of the sale, the assumption and assignment to Buyer, on the terms set forth in the APA, of the Assumed Agreements is approved and authorized, and the requirements of 11 U.S.C. § 365 with respect thereto are deemed satisfied; <u>provided</u>, <u>however</u>, that assumption and assignment of that certain Lease Agreement dated as of May 23, 2007, relating to the premises commonly known as Palmer House in Chicago, Illinois, and that certain Lease Agreement dated November 1, 2007, relating to the gymnasium at the Palmer House (collective, the ***"Palmer***

*Leases"*) shall be effective when and only when the conditions set forth in the letter agreement dated February 22, 2010, by and between Thor Palmer House Hotel & Shops, LLC and Buyer, have been satisfied in full.

6. The Assumed Agreements shall be transferred and assigned to, and remain in full force and effect for the benefit of Buyer and the non-Debtor counterparties thereto, notwithstanding any provision in any contract (including those of the type described in 11 U.S.C. § 365(b)(2), (e), or (f)), or other restrictions that prohibits, restricts, or condition such assignment or transfer. Notwithstanding anything to the contrary in this Order or the APA, the Debtors' liability under the Assumed Agreements will terminate immediately upon the Closing of the sale to Hercules.

7. Buyer shall pay, at the Closing Date, all Cure Amounts for the Assumed Agreements as of the Closing Date, as set forth in the Cure Amounts Schedules, less any amounts received from the Debtors by those counterparties to the Assumed Agreements prior to the Closing Date. To the extent that the Cure Amounts listed in the Cure Amount Schedules are inaccurate for the sole and only reason that such Cure Amounts have not been adjusted to account for the interim period between (i) the date of the negotiated settlements with the counter-parties to the Assumed Agreements, and (ii) the Closing Date ("Interim Period"), the Cure Amounts shall be adjusted accordingly on a per diem basis for the Interim Period. Upon payment of all Cure Amounts in connection with the Assumed Agreements, all defaults and breaches (if any) of the Debtors under the Assumed Agreements arising or accruing before the Closing Date are and shall be cured and deemed cured at the Closing Date by payment of the Cure Amount, as set forth in the preceding sentence, to the counterparties to the Assumed Agreements. Notwithstanding anything to the contrary, the Cure Amounts with respect to the leases at

Waldorf Astoria, Hilton Reservation Worldwide, and the San Francisco Hilton remain subject to further reconciliation among the parties and the amounts for such leases set forth in the Cure Amount Schedules shall not prejudice such landlords' rights to be paid additional amounts due and owing on or promptly following the Closing Date.

8.  With respect to each Assumed Agreement, the failure of any counterparty to such Assumed Agreement to timely object to the assumption and assignment to Buyer of such Assumed Agreement is and shall be consent to such assignment, for purposes of Sections 365(c)(1) and (e)(2) of the Bankruptcy Code.

9.  Notwithstanding anything to the contrary in this Order or the APA, the Excluded Assets includes, but is not limited to, the following: (i) causes of action against Cornelia Fifth Avenue, Richard Aidekman, and Ellen Sackoff, arising from, inter alia, their failure to repay a $2,400,000 promissory note and for damages arising from fraud and breach of representation and warranties in connection with the Cornelia Acquisition, and (ii) causes of action against GVK Limited Partners for any reason including, but not limited to damages sustained by the Debtors arising out of the Cornelia Acquisition based upon various legal theories including, potentially, civil RICO (collectively, the *"Cornelia Claims"*). Additionally, Buyer consents to a waiver of its liens on cash collateral up to $100,000 so that such amount will remain in the Debtors' estates to enable the Debtors to administer the remainder of these cases, provided that these cases remain in Chapter 11 and no Chapter 11 trustee or examiner is appointed in these cases (*"$100,000 Carve Out"*). Buyer further consents, in the event that there is insufficient cash in the estates after the Closing to fund the $100,000 Carve Out to pay at the Closing, as additional consideration for the Sale, the deficiency between the amount of cash remaining in the estates and $100,000.

10. The assumption and assignment to the Buyer of the Spa Master Agreement between Spa Chaka Inc. and Guerlain S.A. ("*Guerlain*") shall be assumed subject to and in accordance with the Amended and Restated Assignment and Consent dated as of February 24, 2010 and attached as Exhibit D hereto and made a part hereof. The cure amount in the approximate amount (adjusted for currency exchange) of $372,437 set forth in the Cure Amounts Schedule has been adjusted to reflect the set off against the monetary defaults under the Spa Master Agreement of certain commissions owed to Spa Chakra, Inc., and such set off is hereby approved. Guerlain shall not be liable to the Debtors for the amount of such commissions, or for any other set-off, liability, claim or counterclaim under or related to the Spa Master Agreement, arising prior to the effective date of the assignment of the Spa Master Agreement to Buyer. Notwithstanding anything to the contrary in this Order, the cure payment to Guerlain shall be made by paying $193,163 at the closing of the sale and the balance in the approximate amount (adjusted for currency exchange) of $179,274 shall be paid within ten days thereafter in the currencies specified, and in accordance with the payment instructions to be provided by, Guerlain.

11. This Order and the APA shall be binding upon, and shall inure to the benefit of, the Debtors, Buyer, and their respective successors and assigns, including, without limitation, any Chapter 7 or Chapter 11 trustee hereinafter appointed in this or any other proceeding commenced under the Bankruptcy Code by or against the Debtors.

12. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the APA, or the rights and duties of the parties

#2022420 v9 \020504 \0007

11

hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Assets free and clear of Liens and Claims.

13. Upon the Debtors' receipt of the consideration specified in Section 2.07 of the APA at the Closing, each of the creditors of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens and Claims against or in the Assets, if any, as such Liens and Claims may have been recorded or may otherwise exist.

14. Each and every federal, state, and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept this Order for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Assets conveyed to Buyer including, without limitation, to accept this Order in lieu of any other document or instrument for purposes of making any recording or filing necessary or desirable, in Buyer's discretion, to effectuate, record or provide notice of the transfer of the Debtors' intellectual property assets to Buyer pursuant to the APA.

15. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens and Claims against or in the Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims that the person or entity has with respect to the Assets, the Debtors and Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

16. The provisions of this Order shall be self-executing, and neither the Debtors, Buyer, nor any other party shall be required to execute or file releases, termination statements,

assignments, cancellations, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; <u>provided</u>, <u>however</u>, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the APA. Without in any way limiting the foregoing, Buyer is empowered to execute and file releases, termination statements, assignments, consents, cancellations, or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the sale contemplated by the APA.

17. Buyer is not liable for the Debtors' debts and obligations unless specifically provided for in the APA or pursuant to this Order. Except as otherwise provided in the APA, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors holding Liens and Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in or with respect to the Debtors and/or the Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Assets to Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens and Claims against the Assets, Buyer and/or its affiliates, designees, assignees, successors, properties, or assets. Neither Buyer nor the Debtors is required to comply with any "bulk sales" or similar laws relating to the transfer of the Assets.

18. All entities who are presently, or who as of the Closing may be, in possession of some or all of the Assets hereby are directed to surrender possession of the Assets to Buyer as of the Closing.

19. Excluded Assets are not property of the Buyer. To the extent a creditor of the Debtors holds a Lien in any Excluded Asset, (i) such lien is unaffected by this Order, and (ii) such creditor continues to hold a Lien in the applicable Excluded Asset(s) subject to the same extent, priority, and validity (if any), and defenses of the estate in any such Excluded Asset. If there are any Excluded Assets and/or proceeds thereof that come into the possession of the Buyer, (a) the Buyer shall hold such Excluded Asset and/or the proceeds thereof in trust for the benefit of the Debtors and such applicable secured creditor, and (b) the Buyer shall promptly deliver such Excluded Asset and/or the proceeds thereof to the Debtors (or, if required by a separate order of the Bankruptcy Court, to such applicable secured creditor).

20. Nothing contained in any Chapter 11 plan confirmed in this case or order confirming any such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.

21. **SMB 3/12/10** Buyer shall be entitled to the protection of Section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is reversed or modified on appeal. ~~The purchase by Buyer of the Assets is a purchase in good faith for fair value within the meaning of Section 363(m) of the Bankruptcy Code and, therefore, Buyer is entitled to the protection of Section 363(m) of the Bankruptcy Code. Accordingly, the reversal, modification or appeal of the authorization provided herein to consummate the APA and the sale of the Assets shall not affect the validity of the sale to Buyer, unless such authorization is duly stayed pending such appeal before the Closing.~~

22. **SMB 3/12/10** The sale approved by this Order is not subject to avoidance or the imposition of costs and damages pursuant to Section 363(n) of the Bankruptcy Code. ~~The~~

~~consideration set forth in Section 2.07 of the APA to be provided by Buyer in exchange for the Assets shall be deemed to constitute reasonably equivalent value and fair consideration.~~

23. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court; <u>provided</u>, that any such modification, amendment or supplement does not have an adverse effect on the Debtors' estates.

24. On the Closing Date, this Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets or a bill of sale transferring good and marketable title in such Assets to Buyer.

25. The automatic stay pursuant to 11 U.S.C. § 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow Buyer to deliver any notice provided for in the APA and (ii) allow Buyer to take any and all actions permitted under the APA in accordance with the terms and conditions thereof.

26. The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and each and every provision, term and condition thereof be authorized and approved in their entirety.

27. As provided by Rules 6004(g), 6006(d) and 7062 of the Bankruptcy Rules, this Order shall be effective and enforceable immediately upon its entry, and the sale approved by this Order may close immediately upon entry of this Order, notwithstanding any otherwise applicable waiting periods.

28. All of the rights of the estates and the Official Committee of Unsecured Creditors on behalf of the Debtors' estates with respect to the allocation and distribution of the sale proceeds, but not the transfer of assets to Buyer free and clear of all Liens and Claims, are expressly reserved and preserved.

29. The provisions of this Order are non-severable and mutually dependent.

30. This Order is the "*Approval Order*" described in the APA.

31. A true copy of this Order (exclusive of exhibits) shall be served on all parties-in-interest by regular, first class mail within seven (7) days of the date hereof.

32. **SMB 3/12/10** ~~The requirement pursuant to Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in conjunction with the Motion is hereby waived~~.

33. The Parties are hereby directed to close immediately upon entry of this Order.

Dated: New York, New York
       March 12, 2010

                                                      /s/   STUART M. BERNSTEIN
                                                     STUART M. BERNSTEIN,
                                                     UNITED STATES BANKRUPTCY JUDGE

**Issued at 5:13 p.m.**